625 A.2d 1286

**PENNSYLVANIA LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION, Petitioner,**

**v.**

**INSURANCE DEPARTMENT and Ronald E. Chronister, Acting Insurance Commissioner of the Commonwealth of Pennsylvania Insurance Department, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Feb. 4, 1993.

Decided May 19, 1993.

598

Jane L. Dalton, for petitioner.

David L. Bricker, Special Funds Counsel, for respondents.

Dennis M. Sheedy, for intervenors.

Before CRAIG, President Judge, McGINLEY, J., and LORD, Senior Judge.

CRAIG, President Judge.

In this appeal from an order of the Insurance Commissioner, the Pennsylvania Life and Health Insurance Guaranty Association (Association) argues that the commissioner exceeded his authority granted by the Life and Health Insurance Guaranty Association Act (Act),[1] by requiring the Association to begin to make payments to Pennsylvania policyholders and annuitants of the insolvent Executive Life Insurance Company (Executive Life). Because the commissioner com-

1. Act of November 26, 1978, P.L. 1188, *as amended,* 40 P.S. §§ 1801–1824.

mitted no error of law in issuing the order in question, we affirm.

Only a brief statement of the facts in this complex case, as stated in the February 18, 1992 opinion of the commissioner, is necessary for the resolution of the narrow question before us. In April 1991, pursuant to an order by the California Superior Court, the California Insurance Commissioner was appointed the conservator of Executive Life. Under the California commissioner's conservatorship, the court authorized Executive Life to pay only 70% of its periodic payments under various annuity policies, beginning on May 1, 1991. At that time, affected employers across the country, including the Pennsylvania employers involved in this case, filed complaints on behalf of their employees who suffered a 30% reduction in their annuity payments from Executive Life.

In the course of his supervision, the conservator solicited and reviewed bids from various entities interested in buying Executive Life. In December 1991 the court found Executive Life to be insolvent, appointed the California commissioner as rehabilitator, and began liquidation proceedings. Thereafter, the court approved a bid from the company that became known as Aurora National Life Insurance Company (Aurora), and began the process of approving the rehabilitation plan, which included a purchase and sale agreement with Aurora, and an enhancement agreement involving the National Organization of Life and Health Insurance Guaranty Associations, of which the Association is a member.

As summarized by the California commissioner in his motion for a final rehabilitation plan, the enhancement agreement provides for participating guaranty associations to fulfill their statutory obligations through the enhancement agreement entered into with the conservator and Aurora. The enhancement agreement would provide, through a variety of mechanisms, additional benefits to eligible policyholders and contract holders whose benefits were reduced by 30% when Executive Life went into conservatorship.

The enhancement agreement makes an effort to resolve various substantial issues relating to guaranty fund coverage on a national basis rather than addressing each state's guaranty association individually. In addition, the enhancement agreement would "enhance" the benefits available to covered policyholders by attempting to fill in the 30% gap created by Executive Life's insolvency.

In the Pennsylvania portion of the case, our commissioner first determined that the Association's obligation to make payments under the Act was triggered by the December 1991 California court order declaring Executive Life to be insolvent. After numerous briefings and conferences, the commissioner issued the following order on February 18, 1992:

1. Based on the Order of Liquidation that will become final on or about February 19, 1992, the Fund [the Association] is statutorily obligated to make payments under the Pennsylvania Life and Health Insurance Guaranty Association Act [the Act] to Executive Life policyholders and annuitants.

2. The Fund [the Association] shall immediately begin preparations for payment to those annuitants whose benefits were cut 30 percent by Court Order and shall begin payments no later than 90 days from the date of this Order.

3. No further administrative proceedings at this docket are necessary and this constitutes the Final Order in this matter.

On February 25, 1992, pursuant to 1 Pa.Code § 35.241,[2] the Association applied for reconsideration and clarification of the commissioner's order. The Association requested that the commissioner clarify that the Association was obligated to pay Pennsylvania residents only, up to the statutory limit specified in the Act.[3] The Association also asked the commissioner to amend the order so that it would not be required to make

2. That regulation allows a party to apply for reconsideration within 15 days of an agency's final order, unless another time period is expressly provided by statute.

3. Section 7(j) of the Act, 40 P.S. § 1807(j), limits the Association's payment obligations to $100,000 for any one life or a total of $300,000 for all benefits.

payments directly to annuitants and policyholders, but could guarantee or assure that payments were made, pursuant to § 7(c) of the Act, 40 P.S. § 1807(c). The Association further objected to the commissioner's time frame for beginning payments to Pennsylvania policyholders, on the ground that the imposition of the ninety-day deadline exceeded her authority.

The commissioner granted reconsideration on March 6, 1992, and issued an amended order on April 8, 1992. The amended order stated:

1.  Paragraph 1 of the February 18, 1992 Order is amended to read as follows:

Based on the Order of Liquidation that will become final on or about February 19, 1992, the Pennsylvania Life and Health Insurance Guaranty Association is statutorily obligated to make payments pursuant to the provisions of the Pennsylvania Life and Health Insurance Guaranty Association Act, 40 P.S. §§ 1801–1824, to Pennsylvania policyholders and annuitants of Executive Life Insurance Company.

2.  The proposed revision to the February 18, 1992 Order that would eliminate the Association's obligation to pay those Executive Life Insurance Company policyholders and annuitants whose benefits were cut 30 percent by Court Order within 90 days (*i.e.* by May 18, 1992) is DENIED. The 90 day time frame to begin payments is reasonable and a proper exercise of the Commissioner's authority under the Act.

Only then did the Association petition this court to review the commissioner's order. In response to the Insurance Department's motion, this court dismissed the Association's appeal of the February 18, 1992 order, limited the appeal to the April 8, 1992 order, and ruled that this court would consider only those matters before the commissioner when he issued the amended order.[4]

Before we address the Association's argument that the commissioner exceeded his statutory authority by ordering the

---

4. *Pennsylvania Life and Health Insurance Guaranty Association v. Insurance Department* (No. 982 C.D.1992, filed July 6, 1992).

Association to fill in the 30% gap for Pennsylvania policyholders and annuitants in a particular manner and within a specific time period, we must explain our proper scope of review.

█ The department argues that the Association is improperly attempting to appeal the commissioner's February 18, 1992 order on an untimely basis through its appeal of the April 8, 1992 order, but we disagree. Pursuant to Pa.R.A.P. 1701(b)(3)(ii) and *Schoff v. Richter*, 386 Pa.Superior Ct. 289, 292, 562 A.2d 912, 913 (1989), when, as the department did here, an agency expressly grants reconsideration of an order within the time prescribed for filing an appeal from that order, "the time for filing a notice of appeal or petition for review begins to run anew after the entry of the decision on reconsideration, whether or not that decision amounts to a reaffirmation of the prior determination. . . ."

In this case, the department granted reconsideration of the February 18, 1992 order on March 6, 1992, well within the thirty-day appeal period specified in Pa.R.A.P. 1512(a)(1). Thus, the appeal period began to run anew after the commissioner issued his amended order on April 8, 1992. Therefore, the Association's argument that the commissioner did not properly amend the February order when he issued his April order is not an attempt to pursue an untimely appeal of the earlier order, but is within our scope of review of the April 8, 1992 order before us.

█ Accordingly, although the decision to grant or deny a request for reconsideration is a matter of discretion which we will reverse only for an abuse of that discretion, *Keith v. Department of Public Welfare*, 121 Pa.Commonwealth Ct. 405, 551 A.2d 333 (1988), the department's decision to grant reconsideration is not in question here. The substance and effect of the department's amended April 8, 1992 order is properly before us in this case, and, as with any insurance department order, our scope of review is limited to a determination of whether constitutional rights have been violated, an error of law was committed, or findings of fact are supported by

substantial evidence. *Nationwide Mutual Insurance Co. v. Foster*, 134 Pa.Commonwealth Ct. 585, 580 A.2d 436 (1990).

■ Section 7(c) of the Act, 40 P.S. § 1807(c) states in relevant part:

(c) Whenever a foreign or alien insurer is an insolvent insurer, the association shall, subject to the written approval of the commissioner:

(1) guarantee, assume, or reinsure, or cause to be guaranteed, assumed, or reinsured the covered policies of residents;

(2) assure payment of the contractual obligations of the insolvent insurer to residents; *or*

(3) provide such moneys, pledges, notes, guarantees, or other means as are reasonably necessary to discharge such duties. (Emphasis added.)

As the statute plainly states, the commissioner can authorize the Association to protect residents' policies through any one of the methods listed, including direct payments when reasonably necessary. The commissioner's ability to choose among the methods listed is unambiguous, and this court cannot ignore the clear language of the statute. Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b).

■ Similarly, we cannot conclude that the commissioner exceeded his authority when he ordered the Association to begin payments within ninety days to those residents whose benefits were cut because the statute clearly allows "other means as are reasonably necessary." 40 P.S. § 1807(c)(3). The commissioner's order is a reasonable method of protecting policyholders "against failure in the performance of contractual obligations due to the ... insolvency of the insurer issuing such policies or contracts," which is the stated purpose of the Act. Section 2 of the Act, 40 P.S. § 1802.

We disagree with the argument that the commissioner's order prevents the Association from participating in the enhancement agreement by requiring it to make direct payments

to policyholders. Although the record reveals that the Association intends to participate in the enhancement agreement, and the Association has informed the department of its intention, the agreement is not yet final, nor has the commissioner approved the Association's participation in it. The commissioner must approve in writing the manner in which the Association fulfills its duties to the policyholders, pursuant to § 7(c) of the Act.

■ Lastly, the April 8, 1992 order clearly limits the Association's obligations to the limits in the Act, even though it does not specifically state that the Association's payments cannot exceed the financial limits imposed by § 7(j) of the Act. The language in paragraph 1 of the April 8, 1992 order, obligating the Association "to make payments pursuant to the provisions of [the Act], 40 P.S. §§ 1801–1824" adequately protects the Association.

Accordingly, we affirm the commissioner's order.

### ORDER

NOW, May 19, 1993, the order of the Insurance Commissioner of the Commonwealth of Pennsylvania, dated April 8, 1992, which amended the order of February 18, 1992, at Docket No. M91–08–22 is affirmed.