155 Pa. Commonwealth Ct. 652 (1993)
625 A.2d 1314
THE PROFESSIONAL INSURANCE AGENTS ASSOCIATION OF PA., MD., AND DE., INC., and Roger Weber, a Licensed Pennsylvania Insurance Agent, Petitioners,
v.
Ronald E. CHRONISTER, in his Capacity as Acting Insurance Commissioner of the Commonwealth of Pennsylvania, Respondent.
Commonwealth Court of Pennsylvania.
Argued December 16, 1992.
Decided May 25, 1993.
*653 Paticia Carey Zucker, for petitioners.
Amy L. Weber, Dept. Counsel, for respondent.
Lewis R. Olshin, for intervenor, respondent Pennsylvania Assigned Risk Plan.
*654 Before CRAIG, President Judge, COLINS, PALLADINO, McGINLEY, PELLEGRINI, FRIEDMAN, and KELLEY, JJ.
COLINS, Judge.
The Professional Insurance Agents Association of Pennsylvania, Maryland, and Delaware, Inc. and Roger Weber, a licensed Pennsylvania insurance agent (collectively, Association) petition for review of the February 27, 1992 opinion and order of the Insurance Commissioner (Commissioner) dismissing the Association's formal complaint in part.
The Association filed its formal complaint (complaint) with the Commissioner on January 22, 1990. The complaint challenges the legality of Section 14A of the rules of the Pennsylvania Assigned Risk Plan (Plan).[1] The complaint alleges that the Association "represents 2,865 members who are licensed to sell fire, surety and casualty insurance contracts for insurance companies authorized to conduct business in the Commonwealth of Pennsylvania." It further alleges that the Plan "is an unincorporated association of insurance carriers" and that the Plan was "purportedly adopted" by the Department, effective October 1, 1984. According to the complaint, Section 14A of the Plan's rules is commonly known as the "take-out" provision. The complaint describes the take-out provision as follows:
18. Section 14A.1 of the Plan Rules outlines the mandatory offer which must be made by assigned carriers to provide *655 motor vehicle liability coverage to insureds in the voluntary market at voluntary market rates.
19. Such offer to remove insureds from the Plan must be made if the insured has met the Plan definition of `clean' as outlined in Section 14A.1 for `three successive years'.
20. The term, `three successive years', contained in Section 14A of the Plan has been interpreted by the Insurance Department, and implemented by the Plan, to mean three successive years of a `clean' driving experience, whether such years were spent in or outside the Plan.
. . . .
22. Under the mandatory take-out provision, Section 14A.1, an assigned carrier must give the `producer of record' notice of its intent to make an offer to provide motor vehicle liability coverage to the insured at the expiration of the assigned risk policy. If at the expiration of the assigned risk policy the insured obtains replacement coverage from another carrier, the assigned carrier's obligation to all parties ends, with the exception of a notice of cancellation. If however, the insured elects to take the coverage offered by the assigned carrier, the assigned carrier shall be required to issue coverage for 1 year.
. . . .
24. The `producer of record' for purposes of the Plan is a hybrid which incorporates the terms, `broker' and `agent' as defined by 40 P.S. § 231, et seq., and 40 P.S. § 251, et seq., respectively, and further, as defined by the Plan in Section 1B entitled, `Producer Eligibility.'
25. Under 14.A.1 of the Plan Rules, the carrier has the option of servicing the policy through the producer of record and of paying him a commission for the `new business'.
. . . .
27. Section 14A.2 of the Plan Rules provides for voluntary take-out by giving assigned insurance carriers the option of *656 issuing coverage to the insured at the expiration of the policy, provided that the producer of record is given notice of the carrier's intent to make an offer of coverage.
28. Under the voluntary take-out provision of the Plan, if the insured finds replacement coverage when his assigned risk policy expires, then the carrier has no further obligation to either the insured or the producer of record, save notice of termination. However, in the event the insured elects to obtain coverage from the assigned carrier, the carrier has no obligation to pay the producer of record a commission for the new business unless that producer is licensed by that company.
The complaint contains three counts. Count I alleges that Subsections 14A.1 and 14A.2 of the Plan's rules, addressing the mandatory and voluntary take-out provisions respectively, are invalid, because they were not created pursuant to regulations established by the Department, as allegedly required by 75 Pa.C.S. § 1741, and because they were not promulgated pursuant to what is commonly known as the Commonwealth Documents Law (Documents Law), Act of July 31, 1968, P.L. 769, as amended, 45 P.S. §§ 1102-1602. Count II alleges that the Plan's rules are invalid and unenforceable, because they were not promulgated pursuant to the Documents Law. Count III alleges that Subsections 14A.1 and 14A.2 are unconstitutional, because they violate Article I, Section 1 of the Pennsylvania Constitution[2] and the Fourteenth Amendment to the United States Constitution[3] by depriving producers of record of their property rights without due process. The *657 Association, in paragraphs 33-38 of the complaint, also alleges that rates charged to consumers are excessive, because commissions paid to agents by the assigned carriers are factored into those rates, but Section 14A of the Plan's rules does not require an assigned carrier to pay a commission for each policy issued. See Subsections 14A.1.(4) and 14A.2.A.(3).
The Plan filed a motion to dismiss and memorandum of law in support thereof on March 21, 1990.[4] The Plan moved to dismiss Counts I and II of the complaint, alleging that 75 Pa.C.S. § 1741 does not require that there be a take-out provision or that any said provision be promulgated as a regulation. According to the Plan, the use of the word "may" in 75 Pa.C.S. § 1741 denotes permissiveness. Additionally, the Plan argued that the Documents Law does not apply to the Plan, because the Plan is not an agency within the definition of that law. The Plan also moved to dismiss Count III of the complaint, alleging that neither state action nor property rights are implicated by the allegations of the complaint. In the motion/memorandum, the Plan also argued that the Association lacks standing to challenge the rates consumers pay pursuant to the take-out provision of the Plan's rules.
The Commissioner's February 27, 1992 opinion and order dismissed the complaint in part. First, the Commissioner dismissed that part of the complaint alleging that Subsections 14A.1 and 14A.2 of the Plan's rules are void, because they were not promulgated as regulations pursuant to the Documents Law. The Commissioner determined that she lacked jurisdiction to consider that portion of the complaint, because the Department does not administer the Documents Law. Additionally, the Commissioner stated that she had recently held that the Plan is not an agency of the Commonwealth, and, therefore, the Plan's rules are not required to be promulgated by regulation. Second, the Commissioner dismissed that portion of the complaint alleging that Subsections 14A.1 and 14A.2 of the Plan's rules are unconstitutional. The Commissioner declined to exercise jurisdiction, because the Department *658 "does not administer, nor has it issued regulations under the Pennsylvania and United States Constitutions." Additionally, the Commissioner noted that the complaint failed to allege either state action or a cognizable property interest. The Commissioner also dismissed that part of the complaint alleging that the rates paid by consumers pursuant to the take-out provision are excessive. The Commissioner agreed with the Plan that the Association lacks standing to bring that part of the action, because it is consumers and not the Association who are aggrieved if the rates are excessive. Finally, the Commissioner determined that the complaint alleged a possible violation of 75 Pa.C.S. § 1741 and ordered that a hearing on that part of the action be scheduled.[5]
"This Court's scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or whether any necessary findings were unsupported by substantial evidence." Martin v. Department of Environmental Resources, 120 Pa.Commonwealth Ct. 263, 266 n. 5, 548 A.2d 672, 674 n. 5 (1988). There is no factual dispute. The issue for this Court's review, therefore, is one purely of law, that is, whether the Commissioner correctly determined that the take-out provision of the Plan's rules does not violate the Fourteenth Amendment of the United States Constitution or Article I, Section 1 of the Pennsylvania Constitution. We hold that neither constitutional provision is violated, because the take-out provision does not involve any state action.
The Association alleges, in paragraph 6 of the complaint, that the Plan "is an unincorporated association of insurance carriers, who are licensed to write motor vehicle liability insurance in the Commonwealth of Pennsylvania, which was created pursuant to the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1741." Alleging that the Plan is a private entity, the Association must, thereby, argue that the nexus between the Plan and the Commonwealth is such that state action can be imputed to the Plan. Jackson v. Metropolitan *659 Edison Company, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). The United States Supreme Court, in Jackson, stated that the appropriate inquiry is "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Id. at 351, 95 S.Ct. at 453. "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961).
In Jackson, the United States Supreme Court determined that Metropolitan Edison Company, a public utility, was not a state actor. Although the court acknowledged that Metropolitan Edison Company was a heavily regulated utility possessing near monopoly status in its service area, the court concluded that those facts did not warrant a determination that the company was a state actor. Additionally, the court concluded that the fact that the company provided an essential public service was not sufficient to make it a state actor. "We have, of course, found state action present in the exercise by a private entity of powers traditionally exclusively reserved to the State." Id. at 352, 95 S.Ct. at 454. The Court determined that the provision of electrical service, however, is not a power traditionally exclusively reserved to the state. Finally, the Court rejected the argument that the company's termination of electric service was state action because the state had authorized and approved the procedures by which service was terminated. The court stated:
All of petitioner's arguments taken together show no more than that Metropolitan was a heavily regulated, privately owned utility, enjoying at least a partial monopoly in the providing of electrical service within its territory, and that it elected to terminate service to petitioner in a manner which the Pennsylvania Public Utility Commission found permissible under state law. Under our decision this is not sufficient to connect the State of Pennsylvania with respondent's *660 action so as to make the latter's conduct attributable to the State for purposes of the Fourteenth Amendment.
Id. at 358, 95 S.Ct. at 457.
Similarly, in Staino v. Pennsylvania State Horse Racing Commission, 98 Pa.Commonwealth Ct. 461, 512 A.2d 75 (1986), wherein a violation of the Fourteenth Amendment was alleged, this Court refused to hold that a racing association which ejected Mr. Staino from a racetrack was a state actor. We said that
[b]ecause a private corporation is licensed and pervasively regulated by the state does not make its actions `state actions' meaning that those actions must comport with the requirements of the Fourteenth Amendment to the Constitution.. . .
Moreover, the fact that a private party follows a procedure outlined in a state statute does not convert the private action into state action.
Id. at 466, 512 A.2d at 77.
The analysis supra, which applies to the Fourteenth Amendment to the United States Constitution, also applies to Article I, Section 1 of the Pennsylvania Constitution. To establish a violation of Article I, Section 1 of the Pennsylvania Constitution, therefore, the Association must establish that the Plan is a state actor. Although Article I, Section 1 does not explicitly provide that the rights contained therein are rights against the state, the Pennsylvania Supreme Court stated, in Western Pennsylvania Socialist Workers 1982 Campaign v. Connecticut General Life Insurance Company, 512 Pa. 23, 515 A.2d 1331 (1986), "that the Declaration of Rights [contained in Article I] is a limitation on the power of state government." Id. at 30, 515 A.2d at 1335. Our Supreme Court further explained as follows:
The drafters of the constitution assumed the existence of a body of civil law, common and statutory, which governs violations of rights and breaches of duties between individuals. Constitutions, long-lasting and difficult to change, primarily govern relationships between an individual and the *661 state. The civil law, which must permit flexible and continuing development as society changes, primarily governs relationships between individuals.
Id. at 32, 515 A.2d at 1335-36 (footnote omitted).
Recently, in Pennsylvania Bar Association v. Commonwealth, 147 Pa.Commonwealth Ct. 351, 607 A.2d 850 (1992), this Court determined that the Motor Vehicle Fraud Index Bureau (Index Bureau), established pursuant to 75 Pa.C.S. §§ 1821-1828, is a state actor. In that case, the Pennsylvania Bar Association alleged that 75 Pa.C.S. §§ 1821-1828 violate the Fourteenth Amendment to the United States Constitution and Article I, Section 1 of the Pennsylvania Constitution. The Department argued that there was no violation, because there was no state action implicated. This Court, however, determined that the Index Bureau is a state actor, for the following reasons. First, 75 Pa.C.S. § 1821 requires the Department to designate the Index Bureau, requires the Index Bureau to file its plan of operation with the Department, and specifies what that plan of operation shall contain. Second, 75 Pa.C.S. § 1824 requires the Index Bureau to file an annual report with the Department and requires the Index Bureau to make information reported to it available to the Department, upon the Department's request. Third, "it is clear that the legislature authorized the Department to promulgate rules and regulations to carry out the objectives of [75 Pa.C.S. §§ 1821-1828] and that the legislature envisioned the Department as the repository of the power to enforce the provisions of [75 Pa.C.S. §§ 1821-1828] and to regulate the Index Bureau." Id. at 361, 607 A.2d at 855 (footnote omitted). Fourth, "[t]he mere fact that the Index Bureau is maintained by funds raised from the private insurers does not convert the Index Bureau into a private entity. . . ." Id. at 361, 607 A.2d at 855. Fifth, the fact that a private corporation administered the Index Bureau, creating a buffer between the Department and the day-to-day operations of the Index Bureau, did not convert it into a private entity.
To support its argument that the requisite nexus exists, the Association argues first, that the Department has proposed *662 changes to the Plan's rules. The Association relies on paragraph 79 of the Department's new matter, in which the Department alleges that it has proposed changes to the take-out provision, because the Act of February 7, 1990, P.L. 11, substantially amended the Motor Vehicle Financial Responsibility Law. The Association argues second, that the Department, in another case before this Court, argued in its brief that the Department and the Plan cooperate in the Plan's administration.[6] The Association argues third, that 75 Pa.C.S. § 1741 requires the Department to "adopt" the Plan, thereby making the Plan its own.[7]
We find none of the reasons advanced by the Association to be compelling. First, the Association asserts that the Department has proposed changes to the Plan's rules. Although said allegation may be accurate, we can find no statute or regulation that requires the Plan to institute changes proposed by the Department. Additionally, the complaint does not allege that the take-out provision itself was proposed by or required by the Department.
The Association next argues that this Court should find that state action exists, because the Department, in Park, argued in its brief that the Department and the Plan cooperate in administering the Plan. To support its argument, the Association quotes two sentences from the Department's brief in Park and argues that principles of estoppel apply. We disagree. Estoppel by record is defined as "the preclusion to *663 deny the truth of a matter set forth in a record, whether judicial or legislative, also to deny the facts adjudicated by a court of competent jurisdiction." Black's Law Dictionary 1146 (5th Ed.1979). The Pennsylvania Supreme Court has said:
In Wigmore on Evidence, 3rd ed., Vol. IV, §1066, p. 59, it is stated: `The use here discussed, of informal or quasi-admissions, has nothing to do with the use of pleadings as solemn or judicial admissions. . . . The latter are conclusive in their nature; but that effect is confined to the cause in which they are made. When used in other causes as ordinary admissions, they are of course . . . not conclusive;. . .'. The law in Pennsylvania is in accord. We have repeatedly held that pleadings are conclusive in their nature only so far as their effect is confined to the cause in which they are filed. When used in other proceedings, they are merely in the nature of admissions by the parties of the facts contained therein, and do not estop them from taking different positions in a subsequent suit. . . .
Lapayowker v. Lincoln College Preparatory School, 386 Pa. 167, 176, 125 A.2d 451, 456 (1956) (citations omitted), overruled on other grounds by Butler v. Butler, 464 Pa. 522, 347 A.2d 477 (1975). The facts on which the Association would have us determine state action are not even admissions in pleadings; they are facts argued in a brief. We decline to apply the principles of estoppel by record to this matter, and we, therefore, decline to determine that state action exists based on the Department's argument in another case.
The Association argues finally that 75 Pa.C.S. § 1741 requires the Department to adopt the Plan and that the Department has "purportedly" adopted the Plan. According to the Association, by so doing, the Department has made the Plan its own. The Department answered the Association's complaint by alleging that the Plan was approved by the Commissioner. Regardless of whether the Plan was approved or adopted, and regardless of whether there is a difference between the two, we hold that the facts before us do not establish a sufficiently close nexus between the Plan and the Department to establish state action. The Plan is an unincorporated *664 association of insurers and is governed by a committee consisting of ten representatives of insurance producers and insurance companies. The Department has no seat on the governing committee. We can find no evidence or allegations in this matter to establish that even if the Department adopted the Plan, the two are sufficiently intertwined to establish state action.
The matter sub judice can be distinguished from Pennsylvania Bar Association. The Plan is a private entity, unlike the Index Bureau. As stated supra, the Plan is an unincorporated association of insurers, governed by a committee of individuals representing private insurance producers and companies. The Department has no seat on that committee; nor does it have any established role in governing the Plan. We cannot say, as we did in Pennsylvania Bar Association, that the General Assembly "envisioned the Department as the repository of the power to enforce" the provisions of the Motor Vehicle Financial Responsibility Law establishing the Plan or to regulate the Plan.
Having determined that there is no state action, we decline to perform any additional analysis, and we hold that the take-out provision of the Plan's rules does not offend the Fourteenth Amendment to the United States Constitution or Article I, Section 1 of the Pennsylvania Constitution.
Accordingly, the February 27, 1992 order of the Insurance Commissioner is affirmed.

ORDER
AND NOW, this 25th day of May, 1993, the order of the Insurance Commissioner of the Commonwealth of Pennsylvania in the above-captioned matter is affirmed.
NOTES
[1] The Plan was established by Section 1741 of the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1741, which provides:

The Insurance Department shall, after consultation with the insurers licensed to write motor vehicle liability insurance in this Commonwealth, adopt a reasonable Assigned Risk Plan for the equitable apportionment among those insurers of applicants for motor vehicle liability insurance who are entitled to, but are unable to, procure insurance through ordinary methods. When the plan has been adopted, all motor vehicle liability insurers shall subscribe thereto and shall participate in the plan. The plan may provide reasonable means for the transfer of individuals insured thereunder into the ordinary market, at the same or lower rates, pursuant to regulations established by the department.
[2] Article I, Section 1 of the Pennsylvania Constitution declares: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."
[3] The Fourteenth Amendment to the United States Constitution provides, in pertinent part:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
[4] The motion to dismiss and memorandum of law in support thereof is a single, combined document.
[5] On July 17, 1992, upon motion of the Plan, the Commissioner ordered that the hearing on the possible violation of 75 Pa.C.S. § 1741 be continued indefinitely, until the matter sub judice is resolved.
[6] At page 27 of its brief in the matter sub judice, the Association quotes two sentences that it attributes to the Department's brief in Park v. Chronister, 151 Pa.Commonwealth Ct. 562, 617 A.2d 863 (1992).
[7] The Association also argues that state action is established by 75 Pa.C.S. § 1741, which states, in pertinent part: "The plan may provide reasonable means for the transfer of individuals insured thereunder into the ordinary market, at the same or lower rates, pursuant to regulations established by the department." According to the Association's brief in the matter sub judice, "the Assigned Risk Plan was not required to provide for take-out; however, if it did, it was mandated to do so `pursuant to regulations established by the department'." We decline to address this argument at the present time, because the issue of whether the Department was required to promulgate regulations regarding the take-out provision of the Plan's rules, is presently before the Commissioner. See footnote 5 supra.