The **PROFESSIONAL INSURANCE AGENTS ASSOCIATION OF PENNSYLVANIA, MARYLAND AND DELAWARE, INC.,** and **Roger A. Weber, A Licensed Pennsylvania Agent, Petitioners,**

v.

**M. Diane KOKEN, Insurance Commissioner of the Commonwealth of Pennsylvania, and Pennsylvania Assigned Risk Plan, Respondents.**

Commonwealth Court of Pennsylvania.

Argued April 2, 2001.

Decided May 22, 2001.

Reargument En Banc Denied June 20, 2001.

See also, 155 Pa.Cmwlth. 652, 625 A.2d 1314.

Patricia Carey Zucker, Harrisburg, for petitioners.

Amy Griffith Daubert, Harrisburg, for respondent, Insurance Commissioner of the Comm. of Pa.

Lewis R. Olshin, Wayne, for respondent, PA Assigned Risk Plan.

Before McGINLEY, J., PELLEGRINI, J., and JIULIANTE, Senior Judge.

McGINLEY, Judge.

The Professional Insurance Agents Association of Pennsylvania, Maryland, and Delaware, Inc. and Roger A. Weber, a licensed Pennsylvania insurance agent (PIA) appeal from a declaratory order of Insurance Commissioner M. Diane Koken (Commissioner) that validated Pennsylvania Assigned Risk Plan Rule 14A (Plan Rule 14A) in the absence of regulations by the Insurance Department (Department).

The extensive history of this case, as recounted in the Commissioner's declaratory opinion, is as follows:

> On January 22, 1990, PIA filed a formal complaint naming the Plan [Pennsylvania Assigned Risk Plan] and then—Insurance Commissioner Constance B. Foster as respondents. PIA claimed that Plan Rules 14A.1 and 14A.2, which provide a mechanism for transfer from the Plan to the ordinary market, are invalid. These rules, otherwise known as 'takeout' provisions of the Plan, were alleged to be invalid for several reasons.
>
> . . . .
>
> The Department and the Plan responded to PIA's complaint, and the Plan filed a motion to dismiss the complaint. . . . Commissioner Foster on February 27, 1992 issued an opinion and order dismissing all but one of the complaint's allegations. She held that the Commonwealth Documents Law did not require Plan rules to be promulgated as regulations and declined to exercise jurisdiction over the constitutional challenge. She also dismissed the excessive rates claim, since the insurance producers had no standing to challenge rates paid by policyholders. However, since a possible violation of the Motor Vehicle Financial Responsibility law was alleged,[1] the Commissioner set that particular matter for hearing.
>
> A hearing date was set, but prior to the scheduled date PIA filed a petition for

---

1. "PIA alleged that the rules violated Section 1741 of the Pennsylvania Motor Vehicle Financial Responsibility Law because the takeout provisions were not created pursuant to regulations of the Pennsylvania Insurance Department ('Department')." Declaratory Opinion, November 19, 1999, at 2.

review of the Commissioner's order to the Commonwealth Court. By order and opinion dated May 25, 1993, the Commonwealth Court affirmed the Commissioner's order. The Professional Ins. Agents Ass'n of PA., MD., and DE., Inc. v. Chronister, 155 Pa.Cmwlth. 652, 625 A.2d 1314 (1993).[2] A hearing was again scheduled, but PIA on June 24, 1993 petitioned the Pennsylvania Supreme Court for allowance of appeal from the Commonwealth Court decision. On December 30, 1994, the Supreme Court affirmed the order of the Commonwealth Court. The Professional Ins. Agents Ass'n of Pennsylvania, Maryland, and Delaware, Inc. v. Maleski, 539 Pa. 269, 652 A.2d 293 (1994)[sic].

The appellate courts then remanded the record to the hearings office on March 1, 1995.... A prehearing conference was held on July 9, 1996 but the parties did not reach a settlement. The parties appeared at a scheduled hearing on September 12, 1996, at which time they articulated a joint stipulation [JS1] for the record and also submitted a written joint stipulation of facts [JS2] (footnote omitted).

Declaratory Opinion, November 19, 1999, at 1–3.

The parties stipulated to the following facts:

9. Section 14A of the Plan Rules is entitled 'Offers to Remove Private Passenger Non Fleet Automobile Insured from the Assigned Risk Plan', which is commonly referred to in the insurance industry as the 'take-out' provision.

10. The take-out provisions of the Plan, Section 14A ('14A'), were filed by the Pennsylvania Assigned Risk Plan and approved by the Department. As set forth in Plan Exhibit 'B' the take-out provisions of the Plan have existed since at least 1978.

11. Refer to stipulation of record. (JS1)[3]

. . . .

13. Take-out under the Pennsylvania Assigned Risk Plan Rules is presently being offered *and effectuated* pursuant to Plan Rule 14A.

Petition for Review, December 20, 1999, Exhibit B: Joint Stipulation of Facts, September 12, 1996, Nos. 9–11 & 13; R.R. at 435a–436a (emphasis added).

On November 19, 1999, the Commissioner issued a declaratory order, which established that "Plan Rule 14A facilitates, but does not transfer, insureds into the ordinary market and may remain in effect *without Department regulations.*" Declaratory Order, November 19, 1999, No. 5 (emphasis added).

The Commissioner made the following pertinent findings of fact and conclusions of law:

1. The Professional Insurance Agents Association of PA., MD., & DE., Inc. ('the association') is a non-profit corpora-

---

**2.** In *Professional Insurance Agents Association of Pa., Md., and De., Inc. v. Chronister,* 155 Pa.Cmwlth. 652, 625 A.2d 1314 (1993)., *aff'd sub nom., Professional Insurance Agents Association of Pa., Md., and De., Inc. v. Maleski,* 539 Pa. 269, 652 A.2d 293 (1994), this Court determined that the take-out provision was constitutional. This Court reasoned that the Assigned Risk Plan was an independent entity and there was no state action involved. *Professional Insurance Agents,* 625 A.2d at 1320.

**3.** Reciting a verbal stipulation, counsel stated that "[t]he parties have agreed ... that the take-out provisions in Section 14A–1 and 14A–2 ... were never promulgated as a regulation." Petition for Review, December 20, 1999, Exhibit I; Reproduced Record (R.R.) at 439a.

tion operating as a trade association representing the interests of its members, insurance agents who are qualified to transact property and casualty business in Pennsylvania.

2. Roger Weber is an insurance agent qualified to transact business in Pennsylvania, and is a member of the association.

3. Roger Weber in the course of his profession submits applications to the Pennsylvania Assigned Risk Plan ('Plan').

4. The association and Roger Weber (collectively 'PIA') initiated the present action by filing a formal complaint with the Insurance Commissioner of Pennsylvania ('Commissioner').

5. The Plan was named as a respondent to the complaint.

6. The Plan is an unincorporated association of insurance carriers created pursuant to 75 Pa.C.S. § 1741.

7. All insurance companies that are licensed to write motor vehicle liability insurance in Pennsylvania are required to be members of the Plan.

8. Consumers who are unable to secure insurance in the voluntary insurance market are able to secure an automobile insurance policy through the Plan. The Plan files rules, rates and forms on behalf of its member insurers. The purpose of the Plan is to equitably apportion among insurers those applicants for automobile insurance unable to procure insurance through ordinary methods.

9. The purposes of the Plan are effectuated through Plan Rules filed by the Plan and approved by the Insurance Department ('Department').

10. The Plan Rules include, inter alia, provisions detailing: Plan purposes, producer eligibility, definitions, applicant eligibility, Plan administration, . . . .

11. Pursuant to Plan Rules, the Plan assigns policy applications submitted by qualified agents to its member insurance companies who issue an insurance policy to the applicant.

12. Section 14A of the Plan Rules is titled 'Offers to Remove Private Passenger Non Fleet Automobile Insured from the Assigned Risk Plan' and is commonly known in the insurance industry as the 'takeout' provision.

13. Plan Rule 14A acts as a mechanism to depopulate the Plan.

14. Plan Rule 14A has been approved by the Department.

15. Plan Rule 14A was never promulgated as a regulation by the Department.

16. Plan Rule 14A was not filed with the Legislative Reference Bureau.

17. The takeout provision of Plan Rule 14A has existed since at least 1978.

18. The Insurance Department has not promulgated regulations prescribing criteria, rules or mechanisms to depopulate the Plan by transferring consumers from the Plan to the voluntary market.

19. Takeout under the Pennsylvania Assigned Risk Plan Rules is presently being offered pursuant to Plan Rule 14A.

20. Plan Rule 14A.1 requires an assigned risk carrier to offer its policyholder a policy if the policyholder and usual drivers have a clean driving record for three policy years.

21. A typical offer pursuant to Plan Rule 14A.1 advises the consumer of options which include accepting the company's offer, staying in the Plan or obtaining coverage from another company.

22. Plan Rule 14A.2 provides guidelines for the voluntary offer by the assigned risk carrier to write a policy.

23. Plan Rule 14A does not mandate that an assigned risk insured be transferred to the regular market, only that certain consumers be given an offer.

24. The means by which an assigned risk insured is placed in the regular market, if at all, is when the insured accepts his assigned risk carrier's offer or that of another carrier.

. . . .

## CONCLUSIONS OF LAW

. . . .

4. Provisions of the Pennsylvania Assigned Risk Plan which are a means to transfer individuals into the ordinary market must be issued pursuant to Insurance Department regulations.

5. The plain definition of 'means' is 'that by which something is done or obtained.'

6. Pennsylvania Assigned Risk Plan Rule 14A is not a 'means' to transfer individuals into the ordinary market as contemplated by the General Assembly.

7. Even if 'means' as used by the General Assembly in 75 Pa.C.S. § 1741 is ambiguous, all applicable statutory rules of construction favor the definition: 'that by which something is done or obtained.'

8. Plan Rule 14A is not the type of provision contemplated by 75 Pa.C.S. § 1741 which must be issued pursuant to Department regulations.

Declaratory Opinion, Findings of Fact (F.F.) Nos. 1–24 at 5–8 and Conclusions of Law Nos. 4–8 at 26–27.[4]

4. PIA filed a petition for reconsideration, however, the Commissioner denied its request.

5. This Court determined that "[t]he Commissioner's declaratory decision and order constitutes an adjudication within the meaning of 2 Pa.C.S. § 101." Memorandum and Order, January 25, 2000, at 2.

On December 20, 1999, PIA petitioned for review in this Court and set forth two counts. Count I in the nature of an appeal requests:

[T]his Honorable Court to reverse and vacate the Declaratory Opinion and Order of November 19, 1999 and enter judgment in favor of Petitioners which finds that Pennsylvania Assigned Risk Plan Rule 14A (Take–Out) violates Section 1741 of the Pennsylvania Motor Vehicle Financial Responsibility Law (75 Pa.C.S. § 1741, 'MVFRL') and that Plan Rule 14A must be promulgated pursuant to regulations established by the Insurance Department. . . .

Petition for Review, December 20, 1999, at 10.

Count II in the nature of a complaint in mandamus, under our original jurisdiction, requests an order directing that "Respondent Commissioner shall vacate her November 19, 1999 Declaratory Opinion and Order and immediately issue an Adjudication on the matter. . . ." Petition for Review at 25. On January 25, 2000, this Court entered an order granting the Commissioner's application for summary relief and dismissing as moot count II of the petition for review.[5]

■ The issues presented for our review are: 1) whether the Commissioner improperly validated Plan Rule 14A in the absence of Department regulations, and 2) whether the Commissioner erred by refusing to be bound by the joint stipulation of facts.[6]

6. Our review with respect to an Insurance Department order is limited to a determination of whether constitutional rights were violated, legal error was committed, or findings of fact were supported by substantial evidence. *Pennsylvania Life and Health Insurance Guaranty Association v. Insurance Department,* 155 Pa.Cmwlth. 597, 625 A.2d 1286 (1993).

First, PIA challenges the Commissioner's interpretation of Section 1741 of the Motor Vehicle Financial Responsibility Law (MVFRL),[7] 75 Pa.C.S. § 1741, to validate Plan Rule 14A in the absence of Department regulations. PIA contends that the Commissioner's interpretation is contrary to the statute's plain, unambiguous meaning. We agree.

■ Pursuant to Section 1921(b) of the Statutory Construction Act of 1972, (Act), "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). In the present controversy, the Commissioner's declaratory opinion and order ignore the letter of the law. According to the Commissioner, Plan Rule 14A provides consumers with the choice to stay in the Plan or explore other opportunities to reduce insurance costs. Plan Rule 14A does not require the insured to transfer from the Plan to the voluntary market but provides a path whereby the insured may choose "takeout" or transfer to the voluntary market.[8]

Interpreting the phrase "means for the transfer," as reflected in Section 1741 of the MVFRL, is critical to the outcome of this controversy.[9] The Commissioner focused upon the insured, who creates the "means for the transfer" by accepting the offer in Plan Rule 14A. "Since consumer action accomplishes the transfer if one occurs, consumer action and not the rule is the means which accomplishes takeout." Declaratory Opinion at 16.

However, the Commissioner's approach assumes that consumers are on equal footing with the Plan insofar as they decide the terms under which they will leave the Plan and obtain coverage elsewhere. Reality leaves the consumer in a more precarious situation because the consumer will undoubtedly encounter numerous difficulties shopping for coverage. Unlike the Commissioner, we must focus on Plan Rule 14A as the "means for the transfer" into the ordinary market.

7. Section 1741 of the MVFRL states that "[t]he plan may provide reasonable means for the transfer of individuals insured thereunder into the ordinary market, at the same or lower rates, *pursuant to regulations established by the department.*" 75 Pa.C.S. § 1741 (emphasis added).

8. The Commissioner explained:
    The Department has thus recognized the importance of consumer choice, universal automobile insurance coverage, availability of the best coverages at the lowest rates, and the stability of the insurance marketplace.... Plan Rule 14A as written comports with the legislative intent and public policy, and does not require promulgation of regulations to be effective.
    Declaratory Opinion at 25.

9. Using the definition of "means," the Commissioner distinguished a transfer by the consumer from the Plan accomplishing a transfer.
    Statutory rules of construction require that '[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage.' 1 Pa.C.S. § 1903. Words in a statute are to be given their plain meaning. Treaster v. Township of Union, [430 Pa. 223,] 242 A.2d 252 (1968)[sic]. The word 'means' is defined as 'that by which something is done or obtained.' Webster's New World Dictionary 839 (3d College ed.1994). The parties have not suggested, nor does research disclose, a judicial definition of this term.
    As discussed above, transfer into the ordinary market pursuant to 75 Pa.C.S. § 1741 is done or obtained by the consumer's actions. If the Plan itself accomplished the transfer, such as by requiring exodus from the Plan under certain conditions, the Plan would be the means by which the transfer were done or obtained. It does not. Thus, this plain and common usage of 'means' mandates an interpretation that regulations are not necessary.
    Declaratory Opinion at 17.

█ Qualifying language that the Plan provides "reasonable" means for transfer "at the same or lower rates" supports the need for administrative regulations to protect consumers.[10] Under Section 1921(a) of the Act, "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). One cannot overlook the reference to regulations at the end of Section 1741 of the MVFRL. We are constrained to conclude that the Commissioner's declaratory order validating Plan Rule 14A does not comply with the requirement for regulations in Section 1741 of the MVFRL.

PIA also asserts that the Commissioner's interpretation of Section 1741 of the MVFRL is not entitled to deference because it departs from explicit statutory language. Again, we agree.

█ The Commissioner highlighted that Plan Rule 14A has been in operation since 1978 without Department regulations. *See* Declaratory Opinion at 25. Nevertheless, a period of usage does not empower an administrative entity beyond its legislative parameters. *Federal Deposit Ins. Corp. v. Board of Finance and Revenue*, 368 Pa. 463, 84 A.2d 495 (1951). Adherence to the statute is of paramount importance.

█ "[T]he rule that courts defer to an agency's interpretation of a statute which the agency administers does not apply where the statute is clear." *Department of Environmental Resources v. Washington County*, 157 Pa.Cmwlth. 1, 629 A.2d 172, 175 (1993). Here, Section 1741 of the MVFRL mandates the promulgation of regulations, and there is no need to defer to the Department's expertise.

█ Second, PIA maintains that the Commissioner erred by refusing to accept as conclusive evidence the joint stipulation of facts entered into between the parties. In particular, PIA submits the Commissioner found that takeout is "offered" without mentioning the stipulated fact that takeout is also "effectuated" by Plan Rule 14A.[11] PIA's argument is compelling.

Effectuation is defined as "the action of putting into effect: accomplishment." Webster's Third New International Dictionary 725 (1993). In the present controversy, the parties stipulated that Plan Rule 14A offers and effectuates the take-out provision. *See* Petition for Review, Exhibit B: Joint Stipulation of Facts, No. 13; R.R. at 436a.

█ It is widely accepted that:
'The stipulation of facts is binding on both the parties and on this court, and facts effectively stipulated are controlling and conclusive.' Tyson v. Commonwealth, 684 A.2d 246, 251 n. 11 (Pa.

---

**10.** This Court has addressed the difference between a regulation and a policy statement:

It is well settled that agency 'regulations' must be promulgated pursuant to the notice and comment procedures contained in the Commonwealth Documents Law in order to have the force and effect of law. *Hillcrest Home, Inc. v. Department of Public Welfare*, 123 Pa.Cmwlth. 289, 553 A.2d 1037 (1989). 'Statements of policy,' on the other hand, need not comply with these procedures. *Id.*

The Supreme Court in *Pennsylvania Human Relations Commission v. Norristown Area School District*, 473 Pa. 334, 374 A.2d 671, 679 (1977), has explained that the critical distinction between a substantive rule or regulation and a statement of policy is the different practical effect that these two types of pronouncements have in subsequent administrative proceedings. A properly adopted regulation establishes a standard of conduct which has the force of law, whereas a general statement of policy does not establish a 'binding norm.' *Id.*

*R.M. v. Pennsylvania Housing Finance Agency*, 740 A.2d 302, 306 (Pa.Cmwlth.1999) (footnote omitted).

**11.** *See* Declaratory Opinion, F.F. No. 19 at 7.

Cmwlth.1996), citing Beasley Industries, Inc. v. Commonwealth, 116 Pa.Cmwlth. 505, 542 A.2d 210 (1988). 'Where the stipulation [is] clear and unambiguous on its face, we are prohibited from examining evidence, as to the intent of the parties which is not within the four corners of the stipulation.' Cobbs v. Allied Chemical Corp. 443 Pa.Super. 386, 661 A.2d 1375, 1378 n. 5 (1995). *Kennedy Blvd. Associates, I, L.P. v. Tax Review Board of the City of Philadelphia,* 751 A.2d 719, 724 (Pa.Cmwlth.2000).

When factoring the definition of effectuation into the statutory interpretation, Plan Rule 14A acts as the "means for the transfer." We agree with PIA that the Commissioner's deletion of the term "effectuated" from her finding of fact resulted in an erroneous statutory analysis.

Lastly, PIA contends that the Department is estopped by its admission from asserting that Plan Rule 14A does not provide a means for transfer of individuals into the ordinary market. We agree.

 In *Professional Insurance Agents Association of Pa., Md., and De., Inc. v. Chronister,* 155 Pa.Cmwlth. 652, 625 A.2d 1314 (1993), *aff'd sub nom., Professional Insurance Agents Association of Pa., Md., and De., Inc. v. Maleski,* 539 Pa. 269, 652 A.2d 293 (1994), this Court stated that "[e]stoppel by record is defined as 'the preclusion to deny the truth of a matter set forth in a record, ... also to deny the facts adjudicated by a court of competent jurisdiction.'" *Professional Insurance Agents,* 625 A.2d at 1319 *quoting* Black's Law Dictionary 1146 (5th Ed.1979).

Here, the Department alleged that "[t]he Department admits that Sections 14A.1. and 14A.2. provide the means for the transfer of individuals insured under the Plan into the ordinary market." Answer and New Matter of the Insurance Department of the Commonwealth of Pennsylvania to the Formal Complaint of the Professional Insurance Agents Association and Roger Weber, April 23, 1990, Paragraph 46, at 9; R.R. at 105a. In light of such an admission, the Department is now precluded from asserting that Plan Rule 14A does not provide a "means for the transfer."

In sum, the Commissioner erred as a matter of law by misapplying the statute together with the joint stipulation of facts.

Accordingly, we reverse.

### ORDER

AND NOW, this 22nd day of May, 2001, the declaratory order of the Insurance Commissioner of the Commonwealth of Pennsylvania in the above-captioned matter is reversed.