**CITY OF WILKES–BARRE, Appellant**

v.

**CITY OF WILKES–BARRE POLICE BENEVOLENT ASSOCIATION.**

Commonwealth Court of Pennsylvania.

Argued Nov. 6, 2002.
Decided Dec. 31, 2002.

---

John P. McLaughlin, Philadelphia, for appellant.

Sean T. Welby, Harrisburg, for appellee.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and MIRARCHI, Jr., Senior Judge.

OPINION BY Judge SIMPSON.

In this public employer's appeal, we address the impact of The Third Class City Code (City Code)[1] and a city home rule charter on an interest arbitration award regarding retirement benefits, a residency requirement and a change in the health care plan. The Court of Common Pleas of Luzerne County (trial court) (1) affirmed the award limiting excessive retirement benefits for future but not current police officers, (2) affirmed the award to the extent it failed to incorporate the city home rule charter's residency requirement, and (3) vacated that portion of the award permitting a change in health care plan. We affirm in part and reverse in part, thereby reinstating the arbitrators' award.

The City of Wilkes–Barre (City) brought a petition for review of an interest arbitration award pursuant to the act commonly known as Act 111[2] involving the City of Wilkes–Barre Police Benevolent Association (Police). Within 30 days of receipt of the award, the Police filed a response and new matter in which they sought vacation of a paragraph of the arbitration award. Substantive and procedural issues were submitted to the trial court.

By way of background, City is a home rule municipality organized pursuant to the Home Rule Charter and Optional Plans Law (HRC & OPL), 53 Pa.C.S. §§ 2901–2984, as well as a "public employer" within the meaning of Section 1 of Act 111, 43 P.S. § 217.1. Police are an unincorporated association recognized as collective bargaining agent for the police officers of the City of Wilkes–Barre. The parties engaged in collective bargaining over the terms and conditions of employment for police officers. When an impasse was declared, the parties referred the issues to binding arbitration. After hearings, a majority of the board of arbitrators rendered the award from which the City appealed. ·

An interest arbitration award issued pursuant to Act 111 may only be reviewed by this Court to determine whether the arbitrators lacked jurisdiction to decide the issues in dispute, whether the proceedings were conducted properly, whether the arbitrators exceeded their authority, or whether the arbitrators decided constitutional questions properly decided by a court. *Monroeville v. Monroeville Police Dep't, Wage Policy Comm.,* 767 A.2d 596 (Pa.Cmwlth.), *appeal denied,* 566 Pa. 672, 782 A.2d 551 (2001). A board of arbitrators: 1) may not order the employer to perform an illegal act; 2) is limited to requiring that a public employer do that which it could do voluntarily; and 3) must craft an award that only encompasses the terms and conditions of employment. *Butler v. Butler Police Dep't, Fraternal Order of Police, Lodge # 32,* 780 A.2d 847, 850 (Pa.Cmwlth.), *appeal denied,* 568 Pa. 620, 792 A.2d 1255 (2001). An error of law alone is not sufficient to reverse an award under this narrow scope of review. *Id.*

---

1. Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §§ 35101–39701.

2. Act of June 25, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

## I. Retirement Benefits

■ Paragraph 7 of the award provides that "[a]ll officers hired after the issuance of this award shall be entitled to pension benefits not in excess of the Third Class City Code." Thus, the award did not diminish retirement benefits for past or current police officers, but did require that benefits for future officers conform to the City Code. The trial court affirmed this portion of the award.

City seeks vacation of paragraph 7 of the award arguing that it conflicts with retirement provisions of the City Code and requires City to perform an illegal act. Without contesting the assertion that some aspects of current retirement benefits are excessive under the City Code, Police contend that the award is enforceable in light of constitutional and statutory prohibitions against diminution of existing retirement rights.[3]

Article I, § 17 of the Pennsylvania Constitution provides:

No *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed.

In *Ass'n of Pennsylvania State Coll. and Univ. Faculties v. State Sys. of Higher Educ.*, 505 Pa. 369, 479 A.2d 962 (1984), our Supreme Court determined that a public employer's unilateral reduction of retirement benefits was an unconstitutional impairment of the employment contracts of non-vested as well as vested employees. Accordingly, the Pennsylvania Constitution and interpretive Supreme Court decisions support paragraph 7 of the arbitration award.

In addition to constitutional limits on modification of existing retirement benefits, there are statutory limits. Specifically, the HRC & OPL limits City's home rule municipal powers by providing (in pertinent part):

(c) Prohibited powers.—A municipality shall not:

. . .

(3) Be authorized to diminish the rights or privileges of any former municipal employee entitled to benefits or any present municipal employee in his pension or retirement system.

53 Pa.C.S. § 2962(c)(3).

The Constitution of Pennsylvania and the HRC & OPL prohibit a home rule municipality, such as City, from unilaterally diminishing rights of any former or present municipal employee in his retirement system. There is no corresponding limitation on consensual modification of existing retirement benefits, nor is there authority limiting arbitrators' ability to modify retirement benefits as part of a statutory dispute resolution process. Nevertheless, here the arbitrators did not require an illegal act by confining limitation on excessive retirement benefits to future, but not current, police officers. Also, the trial court correctly declined to modify this provision of the award.

Regarding City's contention that retirement benefits in excess of the City Code are unlawful and therefore unenforceable, we find guidance in *Restatement (Second) of Contracts*, § 178(1), which provides:

§ 178. When a Term Is Unenforceable on Grounds of Public Policy

---

**3.** Police also contend that this outcome is consistent with our recent holding in *Monroeville v. Monroeville Police Dep't, Wage Policy Comm.*, 767 A.2d 596 (Pa.Cmwlth.2001). However, in *Monroeville* we specifically declined to address the issue of whether an award of illegal police pension benefits should be vacated. Because *Monroeville* does not address this dispositive issue, we will not discuss the case further.

(1) A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms.

Under the *Restatement* approach, unless the statute provides for the unenforceability of excessive retirement benefits, enforceability shall be determined by balancing of interests. "Enforcement will be denied only if the factors that argue against enforcement clearly outweigh the law's traditional interest in protecting the expectations of the parties, its abhorrence of any unjust enrichment, and any public interest in the enforcement of the particular term." *Restatement (Second) of Contracts*, § 178, Comment (b).

Here, the City Code does not address the enforceability of excessive retirement benefits. Therefore, a balancing of interests is appropriate to determine enforceability. This balancing has already been performed by our Supreme Court, which determined that existing retirement benefits for public employees shall be enforced. *In re Appeal of Upper Providence Police, Delaware County Lodge # 27*, 514 Pa. 501, 526 A.2d 315 (1987); *Ass'n of Pennsylvania State Coll. Faculties.* Thus, we find no error in the rejection of City's contention based on the claimed unenforceability of existing excessive retirement benefits.

## II. Residency

■ It is uncontested that § 8:02 of the City of Wilkes–Barre Home Rule Charter requires all City employees to reside in the City. This issue was submitted to the arbitrators, but the resulting award contained no residency requirement.

City contends that because the home rule charter is its controlling law, any contract lacking the home rule residency requirement for municipal employees will require it to perform an illegal act. Police contend that because residency is a mandatory subject of collective bargaining under Act 111, the right of police officers to bargain for residency cannot be supplanted by a home rule charter.

The trial court held that a home rule charter cannot violate Act 111 and that therefore a home rule charter cannot supersede the authority of the arbitrators to address residency. The trial court affirmed the award to the extent it declined to include a residency requirement.

As previously noted, the HRC & OPL limits home rule authority. Thus, the HRC & OPL provides in pertinent part:

(c) Prohibited powers.—A municipality shall not:

. . .

(2) Exercise powers contrary to, or in limitation or enlargement of, powers granted by statutes which are applicable in every part of this Commonwealth.

. . .

(e) Statutes of general application.—Statutes that are uniform and applicable in every part of this Commonwealth shall remain in effect and shall not be changed or modified by this subpart. Statutes shall supersede any municipal ordinance or resolution on the same subject.

53 Pa.C.S. § 2962(c), (e).

Regarding its application in every part of the Commonwealth, Section 9 of Act 111, 43 P.S. § 217.9, provides:

The provisions of this act shall be applicable to every political subdivision of this Commonwealth notwithstanding the fact that any such political subdivision, either before or after the passage of this act, has adopted or adopts a home rule charter.

Thus, the General Assembly intended Act 111 to apply despite existence of a home rule charter. Neither the home rule charter, nor an enactment by a home rule municipality, may contain provisions contrary to or in limitation or enlargement of powers established by Act 111.

Act 111 provides policemen employed by a political subdivision the power to bargain with their public employers concerning the terms and conditions of their employment. *See* Section 1 of Act 111, 43 P.S. § 217.1. It is uncontested that residency is a condition of employment within the scope of Act 111. *Moon v. Police Officers of Moon,* 508 Pa. 495, 498 A.2d 1305 (1985). When Act 111 applies, neither a home rule charter, nor an enactment by a home rule municipality may change the ability to bargain about residency.

Considering the foregoing, the arbitrators did not require City to perform an illegal act when they declined to include a residency requirement in the award. The trial court correctly refused to modify this aspect of the award.

### III. Health Care Plan

■ Paragraph 4(a) of the award provides that new hires will be offered Access Care II health insurance plan, and that any presently employed police officer choosing a different plan will be required to pay the difference in premium between that plan and Access Care II health insurance plan.[4] Apparently, many police officers currently participate in another plan. *See* Reproduced Record (R.R.) at 12a–15a. Reasoning that the health care plan change had not been submitted to the arbitrators, the trial court vacated paragraph 4(a) of the award.

Police requested vacation of paragraph 4(a) because the issue was not submitted to the arbitrators, who therefore lacked jurisdiction to make an award on that issue. City contends that the general topic of health care was raised in its written "issues in dispute."

Before this Court, City does not argue that a change of health care plans was among the proposals identified in its written submission to the arbitrators. It argues, however, that the general issue of the cost of health care was at the forefront of its proposals. Further, City contends that the arbitrators' authority is not limited to simply accepting or rejecting proposals, but includes the power to fashion an award in a fair manner within the total context of the proposals.

City relies on *In re Arbitration Award Between Lower Yoder Township Police and Lower Yoder Township,* 654 A.2d 651 (Pa.Cmwlth.1995), in which we decided whether issues were properly presented to arbitrators, thus affording them jurisdiction. Among other provisions, a "guaranteed wage/no layoff" award was contested. The police statement of issues in dispute included "Compensation and Wages." We concluded that once the issue of wages was properly placed in dispute, the arbitrators "had the power to 'resolve that issue in a fair manner within the total context of the award.'" *Id.* at 654, *citing Bd. of Supervisors v. Butler Township Police Dep't,* 153

---

4. Paragraph 4(a) of the award provides:
   (a) All employees hired on or after the date of the signing of this Award, their spouses and eligible dependents, shall be offered the Access Care II health insurance plan at no cost to the employee. Employees opting to participate in any other health insurance plan whose monthly premium exceeds that of the monthly premium for Access Care II, may do so, however, the employee is responsible to pay that portion of the monthly premium which exceeds the monthly premium of Access Care II. Said payment will be made through a monthly payroll deduction.

Pa.Cmwlth. 306, 621 A.2d 1061, 1064 (1993).

In its Specification of Issues in Dispute, the City raised the following health care proposals:

1) ARTICLE 6, SECTION RELATIVE TO RETIREE HEALTH INSUR-ANCE

*Health care costs have more than doubled in the last five years and now exceed ten (10%) percent of the City's total budget. In an effort to curb these costs,* the City of Wilkes–Barre shall no longer be required to pay for health insurance for retired employees.

2) ARTICLE 6, SECTION 2

Amend to provide health insurance, paid for in its entirety, to the bargaining unit member only. A member may opt to have his or her spouse and/or eligible dependents covered under the City's group health plan provided that the member pays for the premium for said coverage through a monthly payroll deduction.

3) ARTICLE 6

Amend to eliminate any health insurance coverage for bargaining unit member's grandchildren.

4) ARTICLE 6

Amend to discontinue providing health insurance coverage to bargaining unit member's eligible dependents to age twenty-six (26). Instead dependents shall only be eligible for coverage up to age twenty-one (21).

R.R. at 5a (emphasis added). Thus, while City did not explicitly propose a change in health care plans, it clearly raised four proposals to curb health care costs.

■ An interest arbitration award under Act 111 can embrace only those issues which the party requesting arbitration has specified in the written notice of arbitration. *Lower Yoder Township,* 654 A.2d at 653. Section 4(a) of Act 111, 43 P.S. § 217.4(a), clearly states that an interest arbitration can be triggered only by a party giving written notice to the other party "containing specifications of the issue or issues in dispute ...." As a principle of fairness, Act 111 requires that both parties have advance notice of the issues which are at stake. *Lower Yoder Township,* 654 A.2d at 654.

Once the parties surrender control over the bargaining to the arbitrators, they empower the arbitrators to craft a fair resolution of the submitted issues within the total context of the award. The arbitrators are not restricted to selecting specific proposals; rather, they may award any fair resolution on issues submitted. Here, one party gave explicit notice that health care cost containment was at issue. Consistent with our holding in *Lower Yoder Township,* the arbitrators were thereby empowered to resolve the issue.

The trial court relied on *Philadelphia v. Fraternal Order of Police, Lodge No. 5,* 127 Pa.Cmwlth. 422, 561 A.2d 1312 (1989) in resolving this question. In that case, as in the present litigation, a conflict arose regarding a change in health care insurer for city police. The city argued "that change of insurer is implicit in the issues submitted concerning health and welfare and is inherently co-mingled with the issue of insurance costs." *Id.* at 1315. This Court concluded that a dispute of such importance as health care provider should be framed as an issue in advance or by agreement of the parties and made an issue expressly before the panel. *Id.* at 1316 (quoting from lower court opinion). In the absence of an explicit identification of health insurer change as an issue, we affirmed the vacation of that portion of the award permitting a change.

Here, it is not the insurer that is being changed. Rather, a change of plan with the same insurer was awarded. More importantly, however, *Philadelphia v. F.O.P., Lodge No. 5* is not consistent with this Court's current "notice" view of issue submission stated in *Lower Yoder Township.* For these reasons, we decline to follow *Philadelphia v. F.O.P., Lodge No. 5* here.

For the foregoing reasons, we reverse the trial court on the health care plan issue, thereby reinstating the award of the arbitrators.

### O R D E R

AND NOW, this 31st day of December, 2002, we affirm the trial court's order which affirmed paragraph 7 of the award and affirmed the refusal to include a residency requirement in the award. We reverse the trial court's order which vacated paragraph 4(a) of the award. Accordingly, we reinstate the arbitrators' award.