## CITY OF PITTSBURGH

v.

## FRATERNAL ORDER OF POLICE, FORT PITT LODGE NO. 1, Appellant (Two Cases).

Commonwealth Court of Pennsylvania.

Argued May 3, 2004.
Decided May 26, 2004.

---

Eric C. Stoltenberg, Pittsburgh, for appellant.

Hugh F. McGough, Pittsburgh, for appellee.

BEFORE: McGINLEY, Judge, PELLEGRINI, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

The Fraternal Order of Police, Fort Pitt Lodge No. 1 (FOP) appeals from a decision and order of the Court of Common Pleas of Allegheny County (trial court) denying its appeal and finding that the City of Pittsburgh (City) has the right to limit its contribution toward the cost of health care coverage for police officers retiring after January 1, 2004. It also appeals from the trial court's order granting the cross-appeal filed by the City and finding that the Board of Arbitration (Board) lacked jurisdiction to order the City to continue to offer the current health care providers and lacked jurisdiction to remove officer disciplinary information from the Performance Assessment and Review System (PARS).

The FOP is the recognized representative of the City of Pittsburgh Police Officers pursuant to Act 111 of 1968 (Act 111) [1] and the Pennsylvania Labor Relations Act

---

1. Act of June 25, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

(PLRA).[2] The City is a political subdivision of the Commonwealth of Pennsylvania and the municipal employer of the City of Pittsburgh Police Officers within the meaning of Act 111 and the PLRA. From January 1, 2001 through December 31, 2002, the FOP and the City were parties to a Collective Bargaining Agreement (CBA) which set forth the terms and conditions of employment for City police officers, including their medical benefits, upon retirement. In 2002, the FOP initiated collective bargaining with the City over the terms for a successor CBA which would take effect January 1, 2003. When they failed to reach an agreement, the FOP demanded interest arbitration pursuant to Section 4 of Act 111, 43 P.S. § 217.4. The Board was convened to hear and resolve the disputed collective bargaining issues. Specifically at issue were the medical benefits provided to a retiring officer and his or her spouse.

Prior to this dispute, two interest arbitration awards in 1996 and 2000 determined the medical benefits available to retired officers and became part of the CBAs effective for the years delineated in those awards. The January 31, 1996 interest award effective from January 1, 1996 through December 1, 1997, contained "tiers" that set benefit levels and restrictions for officers retiring after January 1st of the following calendar years: 1979, 1980, 1982, 1984 and 1996. Relevant to this case, the interest award stated that the City would provide any officers who retired after January 1, 1982, 1984 and 1996 with Blue Cross Blue Shield/Major Medical insurance coverage and would contribute towards the cost of the coverage an amount equal to that charged by Blue Cross/Blue Shield. The retirees and their spouses would also be allowed to enroll in one of the managed care health insurance plans in lieu of Blue Cross. Under the November 30, 2000 interest award effective from January 1, 2001 through December 31, 2002, the City was required to provide health benefits through at least one of the current provider networks at no cost to the employees; however, the City could also make arrangements to offer enhanced options with contributions by the employees, and the alternative plans could have a different provider network. In terms of provider networks, the City would have to obtain competitive bids from qualified bidders, and based on the bidding process, at least one, and possibly more, networks of providers would be offered at no cost options. Higher cost networks could continue to be offered; however, employees would pay the difference in cost between the lowest cost network and the more expensive networks. The 2001–2002 CBA resulting from the 2000 interest award also added these same provisions for officers who retired after January 1, 2001.

Prior to the hearing, the FOP provided notice to the City of its demands for 2003 which contained several issues regarding medical insurance. Before the Board, the City submitted as "issues in dispute" a proposal that it be permitted to change medical insurance providers for retirees and future retirees. It also proposed that its contribution toward premium costs for retiree medical insurance be capped at the date of retirement with the retiree paying any increases. After several hearings, the Board issued an award dated February 14, 2003, effective from January 1, 2003 through December 31, 2004, granting in part and denying in part the City's proposal. Specifically, the Board stated the following in Section 14 (pertaining to Insurance), Paragraphs 3 and 4 of the award:

2. Act of June 1, 1937, P.L. 1168, as amended, 43 P.S. §§ 211.1–211.13.

3. Effective January 1, 2004, officer contribution toward the cost of health-care coverage shall be frozen at the rates set for 2003. The City shall continue to offer the current healthcare providers. Effective July 1, 2004, officer contribution toward the cost of health-care coverage shall be eliminated.

4. Effective January 1, 2003, the City may change the healthcare providers for present and future retirees as long as the coverage provided remains the same. For those retiring after January 1, 2004, the City shall contribute toward the cost of husband and wife coverage (Section 14 B II 9) for each employee so electing, an amount equal to the amount charged for such insurance by the carrier providing such coverage on the date of his/her retirement.

Additionally, under Section 19(B) of the award, regarding Police Disciplinary Procedures, the award provided:

If an officer is not the subject of any sustained DAR [Disciplinary Action Report] during the above respective "reckoning period", the sustained DAR will, consistent with the above periods and at the express, written request of the officer, be removed from the PARs system, the officer's station jacket and from the files maintained at the Officer of Personnel and Finance and shall not be considered for purposes of discipline or promotion. All DARs that are not sustained shall be removed immediately from the above stated filing systems.

The FOP filed an appeal with the trial court requesting it to vacate Section 14, Paragraph 4 of the award as it applied to current retirees and officers actively employed prior to January 1, 2003. It argued that the current retirees and those officers actively employed prior to the date of the award had a contractual right to specified medical insurance coverage under which they retired or would retire, and a contractual right to have the City pay any premium increases for such coverage after retirement. The FOP further argued that:

• Section 14, Paragraph 4 of the award constituted an unconstitutional retroactive reduction of the contractual retirement benefits in violation of Art. I, § 10 of the United States Constitution, and Art. I, § 17 of the Pennsylvania Constitution;[3]

• The award violated Section 2962(c)(3) of the Home Rule Charter and Optional Plans Law;[4] and

• Because the award modified the health insurance benefits of officers retired as of the effective date of the award, the arbitration panel lacked jurisdiction to address the benefits of retirees inasmuch as they have ceased to be members of the collective bargaining unit.

The FOP requested the trial court to vacate the award and reinstate the prior contractual requirement that the City provide specific health insurance at retirement at no cost to the officer and spouse.

The City also filed an appeal from the award requesting the trial court to vacate

---

**3.** Article I, Section 10 of the United States Constitution provides in relevant part:

[1] No state shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts ...
Article I, Section 17 of the Pennsylvania Constitution provides:
No *ex post facto* law, nor any law impairing the obligation of contracts, or making irre-

vocable any grant of special privileges or immunities, shall be passed.

**4.** 53 Pa.C.S. § 2962(c)(3). That section provides that a municipality shall not:
(3) Be authorized to diminish the rights or privileges of any former municipal employee entitled to benefits or any present municipal employee in his pension or retirement system.

Section 14, Paragraph 3 of the award because the Board lacked jurisdiction to order the City to continue to offer the current health care providers as the FOP had not previously identified this as an issue in dispute prior to arbitration. It also argued that the Board exceeded its authority in Section 19(B) of the award concerning the disposition of police disciplinary records in the PARS system by ordering the removal of officer disciplinary information from PARS because only the federal court had jurisdiction to address this issue, which it had by order of the United States District Court for the Western District of Pennsylvania (District Court) entered on October 18, 2002. In response, the FOP provided the trial court with subsequent opinions and orders of the District Court dated April 22, 2003 and November 14, 2003, specifically upholding the portion of the award being challenged by the City.

The trial court granted the City's petition to vacate Section 14, Paragraph 3 of the award that required the City to continue to offer the current health care providers, holding that the Board lacked jurisdiction to address the issue because "no issue listed in the notice of binding arbitration could fairly be construed to challenge the identity and number of health care providers as an issue in dispute. The notice merely seeks the elimination of the employees' contributions on all of the offered plans." (Trial court's December 10, 2003 opinion at 3.) It also vacated Section 19(B) of the award regarding the PARS system by relying upon the terms in a stipulated order of September 30, 2002, issued by the District Court, where the terms of a consent decree provided that the City had to maintain a computerized database which had to contain disciplinary file information as well as other supporting documentation.

■ As for the FOP's appeal, the trial court denied its request to vacate the Board's award placing a cap on the City's contribution toward the cost of future retiree medical insurance to an amount equal to the amount paid by the City for such coverage on the date of the officer's retirement. The trial court found that the cap was valid because it was "placed by the Board on the City's contribution to the cost of health care coverage for officers retiring after January 1, 2004 carried forward and renewed a mutually agreed to contractual right in place since January 1, 1996. The cap is valid because it affects only affected officers retiring after a date certain in the future." (Trial court's December 10, 2003 opinion at 7.) The trial court further found that the award did not violate the United States or Pennsylvania Constitutions or Section 2962(c)(3) of the Home Rule Charter and Optional Plans Law because it was an interest arbitration award and not a unilateral action by the municipal employer, and the arbitration panel did not exceed its power when it issued Section 14, Paragraph 4 of the award. An appeal to this Court by the FOP followed.[5]

## I.

### Elimination of Specific Providers for Existing Retired Police Officers

■ As it did before the trial court, the FOP contends that because the Board only has jurisdiction over the terms and conditions of employment of bargaining-unit

---

5. An interest arbitration award issued pursuant to Act 111 may only be reviewed by this Court to determine whether the arbitrators lacked jurisdiction to decide the issues in dispute, whether the proceedings were conducted properly, whether the arbitrators exceeded their authority, or whether the arbitrators de-

cided constitutional questions properly decided by a court. *Municipality of Monroeville v. Monroeville Police Department Wage Policy Committee*, 767 A.2d 596, *petition for allowance of appeal denied*, 566 Pa. 672, 782 A.2d 551 (2001).

members, the Board exceeded its jurisdiction in Section 14, Paragraph 4 by allowing the City to substitute different heath care providers than the ones denominated in the past.[6] The City responds that since the 2000 arbitration award, specific providers were not listed in the contract, and those retiring after that date could not even argue that they were entitled to a specific provider because all that retirees were entitled to receive was the same coverage, not the same health care providers.

Without reaching the issue of whether the City can unilaterally change providers that the retirees are entitled to receive coverage and not a specific health care provider, we have held that "[a] municipality may not enter an agreement over the rights of existing retirees because such individuals are no longer employees or members of the bargaining unit." *Township of Wilkins v. Wage and Policy Committee of the Wilkins Township Police Dept.*, 696 A.2d 917, 920 (Pa.Cmwlth. 1997).[7] Because the FOP cannot bargain for the rights of retirees, the Board did not even have jurisdiction to address this issue and we vacate that portion of the Board's award.[8]

## II.

### Changes in Benefits for Future Retirees

 The FOP argues that the arbitration award violated Article I, Section 10 of the United States Constitution and Article 1, Section 17 of the Pennsylvania Constitution because Section 14, Paragraph 4 of the award, capping the City's contribution towards officers' post-retirement medical benefits for those active-duty police officers who retire after the effective date of the award, was part of the City's contractual obligation and could not be diminished by an award. While public retirement benefits, if awarded at the time of retirement, are a form of deferred compensation, constitute contractual benefits and are rights protected by the United States Constitution, *see Association of Pennsylvania State College and University Faculties v. State System of Higher Education*, 505 Pa. 369, 479 A.2d 962 (1984), that does not mean that the Board was without authority to change future retirees' benefits that were awarded in previous contracts. As we pointed out in *City of Wilkes–Barre v. City of Wilkes–Barre Police Benevolent Association*, 814 A.2d 285 (Pa.Cmwlth.2002) "[t]here is no ... limitation on consensual modification of existing retirement benefits, nor is there authority limiting arbitrators' ability to modify retirement benefits as part of a statutory dispute resolution process." 814 A.2d at 288. All that those cited constitutional provisions foreclose is unilateral change in contractual benefits, not changes that are entered by mutual agreement in a

---

6. The FOP also argues that under Art. I, Section 10 of the United States Constitution and Art. I, Section 17 of the Pennsylvania Constitution against ex post facto laws and Section 2962(c)(3) of the Home Rule Charter and Optional Plans Law, it was illegal for the City and, consequently, the Board to diminish the rights or privileges of any former municipal employee entitled in his pension or retirement system.

7. Note, though, that *Wilkins* relied on Justice Zappala's Opinion in Support of Affirmance in Part and Reversal in Part, a splintered *per curiam* decision in *Lower Merion Fraternal Order of Police Lodge No. Twenty–Eight v. Township of Lower Merion*, 511 Pa. 186, 512 A.2d 612 (1986), *petition for allowance of appeal denied*, 518 Pa. 118, 541 A.2d 738 (1988), in which only one other Justice joined.

8. Not before us is the 1996 award, which appears to have given retirees increased benefits.

contract or by an Act 111 panel. If we were to adopt the FOP's position, it would mean that collective bargaining contracts and Act 111 boards could only award increased benefits and could never reduce any benefits.[9]

## III.

### Waiver

■ The FOP also argues that the trial court erred in holding that the Board did not have jurisdiction to issue an award requiring the City to continue to offer the current health care providers, not required by the previous award, because it did not give the City the notice of that demand required by Section 4(a) of Act 111, 43 P.S. § 217.4(a). In *In re: Arbitration Award Between Lower Yoder Township Police & Lower Yoder Township*, 654 A.2d 651, 653–654 (Pa.Cmwlth.1995), we set forth the importance of the notice provision in Act 111, stating that:

An interest arbitration award under Act 111 can embrace only those issues which the party requesting arbitration has specified in the written notice of arbitration. Section 4(a) of Act 111, 43 P.S. § 217.4(a), clearly states that interest arbitration can be triggered only by a party giving written notice to the other party "containing specifications of the issue or issues in dispute...." Section 4 of Act 111 is a codification of the long-standing common law rule that arbitrators must decide all the issues presented to them, and only those issues, and "[e]very presumption is made in favor of

the award...." The importance of the specification of issues is underscored by Section 5 of Act 111, 43 P.S. § 217.5, which requires that the notice by the Police under Section 4, specifying the issues, must be "served upon the head of the governing body of the local unit involved." That requirement of formal service attests to the importance of identifying in advance the issue to be subject to interest arbitration.

654 A.2d at 653–654. (Citations omitted).

The following is the "notice" which the FOP gave to the City regarding its demands for 2003 relative to health insurance coverage:

Issue # 1

Section 14: Health Benefits

*Section B, Page 91—Health Insurance*

Equal medical coverage for any officer and his or her partner. In addition, wherever the agreement refers to spouse, said reference shall apply to a partner.

Issue # 4

Section 14: Insurance

*Paragraph E, Page 117—Vision Insurance*

The City shall provide the following vision care benefits to members and their family: Eye examinations at one hundred (100%) percent UCR and the following allowance for lenses, contact lenses and sunglasses.

Dependents under age nineteen (19) are eligible for examination and lenses once

---

9. The FOP also contends that the award violates Section 2962(c)(3) of the Home Rule Charter and Optional Plans Law, 53 Pa. C.S. § 2962(3), which provides: "A municipality shall not: (3) Be authorized (in Home Rule Charter) to diminish the rights or privileges of any former municipal employee entitled to benefits or any present municipal employee if his pension or retirement system forecloses the reduction in pension benefits." All this provision does is foreclose a home rule charter from unilaterally changing pensions by passing an ordinance; it does not foreclose reduction in benefits for employees through the collective bargaining process or an Act 111 arbitration award. *See also City of Wilkes–Barre.*

during a twelve (12) month period. Members and dependents age 19 and older are eligible for examination and lenses once during a twenty-four (24) month period.

The City of Pittsburgh shall pay the entire cost of the coverage as outlined above.

Issue # 5

Section 14: Insurance

*Paragraph B—Health Insurance, Page 91*

The City shall eliminate all employee contributions toward all health care coverage. The cost of all health care coverage shall be paid by the City.

Issue # 6

Section 14: Insurance

*Paragraph B—II, Page 98*

If a retired Officer Re–Marries full medical coverage shall be afforded to his or her spouse, equal to that coverage afforded to the retired officer. This shall affect only those Officers retiring after January 1, 2003 and beyond.

Issue # 7

Section 14: Insurance

*Paragraph B—Subsection 5, Page 97*

Dependent children and spouse to receive the same coverage as listed in Subsection 5 in the event of any death of an active member.

(Original Record at 169a, 223a, 230a, 232a and 233a.)

While the FOP argues that it raised the issue of the identity and number of insurance providers that the City must offer its employees and retirees in Issue # 5, nowhere contained within that issue or any of the other issues does the FOP raise a demand regarding the identity and the number of insurance providers that the

City must offer its employees and retirees. While there are certain times when an issue may be subsumed in another issue such as in *City of Wilkes–Barre v. City of Wilkes–Barre Police Benevolent Association*, 814 A.2d 285 (Pa.Cmwlth.2002), where we held that an employer's notice of four proposals to curb health care costs was sufficient to allow the arbitrators to a change of plan with the same insurer, where a demand is a major one or cannot be fairly subsumed within an issue, it must be specifically raised. Where, as here, a party wants to designate a specific health care provider(s), that issue cannot be fairly subsumed within Issue # 5 demanding eliminating employee contributions. Not only can it not be subsumed within that issue, we have already held that when the denomination of an insurance provider(s) is of great importance, it must be specifically framed as an issue in the notice given prior to the arbitration proceeding. *Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 127 Pa.Cmwlth. 422, 561 A.2d 1312 (1989). Because an interest arbitration award under Act 111 may only embrace those issues which the party requesting the arbitration has specifically raised in the notice of arbitration or that are fairly considered as subsumed within those issues, and the FOP failed to raise this issue before the Board, the trial court properly determined that the Board exceeded its jurisdiction and vacated that portion of the Board's award.

## IV.

### Discipline Reports

▆▆▆▆ Finally, the FOP contends that the trial court erred in vacating the provision of the award requiring the removal of discipline reports from the PARS system because it was illegal [10] under the District

---

10. While an arbitration board can order a

political subdivision to do anything within its

Court's Order dated October 18, 2002, that required retention of those records. We agree. By Opinion and Order dated April 22, 2003, the District Court rejected the City's request for declaratory relief seeking to have Section 19B of the award declared in violation of the October 18, 2002 order; it specifically held "the court finds that the 2003 [Arbitration] Award does not violate the consent decree." [11] While normally, for the purpose of arbitration, what is legal or illegal is determined as of the date of the arbitration award, that does not mean that the District Court's order made this provision legal when it was illegal at the time of the award as the City suggests. Rather, the District Court's order changed nothing but only declared that on the date of the award, Section 19(B) was not in violation of its October 2002 consent decree. Because this provision was not a violation of the consent decree, it is legal and the trial court's order striking this provision is reversed.

Accordingly, the portion of the order that vacated Section 19(B) of the award is reversed and that section is reinstated; the portion of the order that upheld Section 14, Paragraph 4 is reversed to the extent that it deals with retirees and that portion of that section is vacated; in other respects the order is affirmed.

### ORDER

AND NOW, this 26th day of May, 2004, the order of the Court of Common Pleas of Allegheny County dated December 10, 2003, is affirmed in part and reversed in part. The portion of the order that vacated Section 19(B) of the award is reversed and that section is reinstated; the portion of the order that upheld Section 14, Paragraph 4 is reversed to the extent that it deals with retirees and that portion of that section is vacated; in other respects the order is affirmed.

---

delegated authority, it is in excess of the exercise of the arbitrator's powers if he or she requires the public employer to perform an act that it is prohibited by law from performing. *Bristol Borough v. Bristol Borough Police Benevolent Association,* 815 A.2d 662 (Pa. Cmwlth.2003). The FOP is not arguing that violating a consent decree would not be an illegal act.

11. The District Court in an Opinion and Order dated November 14, 2003, denied reconsideration.