IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Honorable Vaughn D. Spencer, :
Mayor of the City of Reading :
:
v. : No. 1377 C.D. 2013
: Argued: May 13, 2014
City of Reading Charter Board, :
Appellant :


BEFORE:  HONORABLE MARY HANNAH LEAVITT, Judge
         HONORABLE P. KEVIN BROBSON, Judge
         HONORABLE ANNE E. COVEY, Judge


OPINION
BY JUDGE LEAVITT                              FILED: August 8, 2014


The City of Reading Charter Board (Charter Board) appeals an order of the Court of Common Pleas of Berks County (trial court) that reversed the Charter Board's adjudication charging The Honorable Vaughn D. Spencer, Mayor of the City of Reading, with violations of the City of Reading's Charter.[1]  The trial court held, without taking additional evidence, that the Charter Board capriciously disregarded evidence and made findings of fact not supported by substantial evidence.  Mayor Spencer has filed a motion to quash asserting the Charter Board lacks standing to appeal.  We deny the motion to quash and affirm the trial court.

**Background**

Mayor Spencer was elected to office in November 2011.  During his campaign, Spencer announced a "Policy Action Plan" to restructure the Mayor's

---

[1] CHARTER FOR THE CITY OF READING, COMMONWEALTH OF PENNSYLVANIA (2010) (Charter).

office. To achieve that goal, Mayor-elect Spencer sought to have several new staff appointed to the Mayor's office who would be ready to assume their duties on January 2, 2012, when his term began. The prospective employees were Eron Lloyd, Lawrence Murin, Marisol Torres, Michael Dee, and Mark Drabinsky (Employees). In December 2011, Spencer sought the advice of the City's Managing Director, Carl Geffken, and others to determine whether the Employees could be hired and in place on January 2, 2012, without violating the Charter, the Administrative Code, or any other applicable law. At a meeting on December 28, 2011, Geffken advised Mayor-elect Spencer that Lloyd, Murin, Drabinsky and Dee[2] could be hired on a part-time basis without reopening the previous year's budget or amending the City's annual Position Ordinance. Geffken further advised Spencer that there was precedent for this procedure. Several part-time positions in the police department had not been listed in the Position Ordinance but were nevertheless filled.

Following the meeting, Geffken made offers of part-time employment to Lloyd, Murin, Dee and Drabinsky. On January 3, 2012, Geffken sent a letter to each employee confirming the offer and acceptance of employment and indicating that the position was part-time and without benefits. During their tenure, Lloyd, Murin, Drabinsky and Dee worked more hours than the definition of a part-time employee allows, albeit without the compensation paid to full-time employees.[3]

---

[2] Torres was offered a full-time position as Spencer's Executive Assistant, a position enumerated in the position ordinance.

[3] In its brief, the Board explains that whether Lloyd, Murin, Dee, or Drabinsky were part-time or full-time employees did not affect the Board's decision. In its view, the positions, whether fulltime or part-time, were not authorized by the Charter or the City's Administrative Code.

On February 28, 2012, in response to questions about hiring part-time employees for positions not included in either the City's annual budget or Position Ordinance, the Charter Board issued Advisory Opinion No. 28, stating that the Charter requires all employment positions to be listed in the annual Position Ordinance and budget before they can be filled. Thereafter, City Council enacted an ordinance to amend the 2012 budget and Position Ordinance to include the positions for Lloyd, Murin, and Torres.[4]

On March 23, 2012, a City Council Member, Donna Reed, filed a complaint with the Charter Board regarding the City's hiring of the Employees. The Charter Board's Investigative Officer concluded that the Mayor had violated the Charter by hiring the Employees without the proper authorization. In response, Mayor Spencer obtained a sworn statement from Geffken about the hiring of the Employees. In the affidavit, Geffken stated that he had advised Mayor-elect Spencer in December 2011 that hiring the Employees part-time was permitted and that Geffken "solely determined and decided that offers of part-time employment would be promptly made." Reproduced Record at 408a (R.R. ___). Geffken confirmed that the offers of employment were made and accepted prior to January 1, 2012, and prior to Mayor Spencer taking office on January 2, 2012. Based on the Geffken Declaration, the parties stipulated that if called to testify at the Charter Board hearing,

> former City Managing Director Carl Geffken would state that, while Mayor-elect Spencer desired to have his senior team hired, Mr. Spencer did not in any way pressure or influence Mr.

---

[4] Drabinsky accepted the full-time position of Webmaster for the City of Reading in March 2012. Dee's position was not approved in the amended ordinance; therefore, his employment was terminated.

> Geffken with respect to his determination that [the Employees] could properly be hired on a part-time basis.

R.R. 406a.

After a hearing, the Charter Board determined that Mayor Spencer had violated the Charter by hiring the Employees to positions that did not appear in an amended budget or Position Ordinance. The Charter Board further held that the Mayor hired the Employees through his subordinate Geffken. Finally, although the Charter Board found that the January 3, 2012, letters to the Employees confirmed the "offers and acceptances of employment *previously* made and given," the Charter Board also determined that the offers and acceptances "occurred on January 3, 2012." R.R. 604a, 610a (emphasis added). The Charter Board rejected the stipulation of the parties regarding the statements Geffken would have made if called to testify, finding those statements "not credible." The Charter Board publicly censured Mayor Spencer and levied a $1,000 administrative fine.

Mayor Spencer appealed the Charter Board's decision to the trial court. The trial court reversed and vacated the Charter Board's order, holding that its findings of fact were not supported by substantial evidence. The trial court also held that the Charter Board capriciously disregarded the Geffken Declaration by simply rejecting it as "not credible." The Charter Board now appeals to this Court.

On appeal,[5] the Charter Board argues that the trial court erred by applying an incorrect standard of review, holding that the Board's decision was not

---

[5] When the trial court does not take additional evidence, our standard of review of a local agency's adjudication is limited to determining whether constitutional rights were violated, an error of law was committed, or the necessary factual findings are supported by substantial evidence. *Ondek v. Allegheny County Council*, 860 A.2d 644, 648 n.7 (Pa. Cmwlth 2004); 2 Pa. C.S. §754(b). An agency abuses its discretion when its findings of fact are not supported by substantial evidence. *Residents Against Matrix v. Lower Makefield Township*, 845 A.2d 908, 910

**(Footnote continued on the next page . . .)**

4

supported by substantial evidence, and substituting its own judgment for that of the Board.

Mayor Spencer has filed a motion to quash the instant appeal, arguing that the Charter Board, an adjudicatory tribunal, lacks standing to appeal a reversal of its adjudication.

**Motion to Quash Appeal**

We begin with the motion to quash. Mayor Spencer argues that the Charter Board lacks standing to appeal for two reasons. First, as an adjudicatory tribunal, the Charter Board could not be aggrieved by the trial court's order reversing its adjudication, any more than an Article V court of law under the Pennsylvania Constitution can be aggrieved by an appellate court reversal of its decision. Second, any standing conferred upon the Board by reason of its prosecutorial function is destroyed because this appeal is being pursued by the adjudicative side of the board, which, in turn, improperly commingles the Board's prosecutorial and adjudicative functions. We consider these two standing arguments *seriatim*.

In support of his first standing argument, Mayor Spencer cites to *Appeal of Board of Adjustment, Lansdowne Borough*, 170 A. 867 (Pa. 1934). In *Lansdowne*, the board of adjustment denied an application for a special exception. The landowners appealed to the trial court, and it reversed the decision of the board of adjustment. The board of adjustment appealed the trial court's order. The

**(continued . . .)**
(Pa. Cmwlth. 2004). In determining whether findings are supported by substantial evidence, the Court's scope of review is whether "there is a rational support in the record, when reviewed as a whole, for the agency action." *Republic Steel Corp. v. Workers' Compensation Appeals Board (Shinsky)*, 421 A.2d 1060, 1062-63 (Pa. Cmwlth. 1980).

Pennsylvania Supreme Court held that the board of adjustment was an adjudicatory tribunal, not an agency, and, thus, could not be aggrieved by the trial court's order. Accordingly, it lacked standing to appeal.

The Charter Board counters that *Lansdowne* is not applicable because the Charter Board has been assigned functions that give it a stake in the outcome of its decisions. The Charter Board claims to have been modeled after the State Ethics Commission, which was created to administer, prosecute, enforce, and adjudicate cases under the Public Official and Employee Ethics Act, 65 Pa. C.S. §§1101-1113. Specifically, pursuant to the Charter, the Charter Board has the power and duty to "[h]ear and decide all complaints alleging violations of the Charter and Administrative Code." CHARTER BOARD ORDINANCE §III.A(1); R.R. 117a. Further, the Charter Board may impose penalties, initiate preliminary investigations, issue subpoenas, adopt rules and regulations, issue advisory opinions, enforce and interpret the Charter and "have all other powers necessary" to effectuate the Charter. CHARTER BOARD ORDINANCE §§II and III.A.(1)-(7); R.R. 114a-117a. As such, the Charter Board's interest in appeals from its decisions is direct and substantial.

The basic principle of standing is that a person is not adversely affected or aggrieved by a judicial determination unless he has a direct and substantial interest in the matter. *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 280 (Pa. 1975). In the context of an agency, "when the legislature statutorily invests an agency with certain functions, duties and responsibilities, the agency has a legislatively conferred interest in such matters." *Pennsylvania Game Commission v. Department of Environmental Resources*, 555 A.2d 812, 815 (Pa. 1989). Here, the Charter Board argues that its interest is direct

6

and substantial because the trial court's ruling directly conflicts with its ability to enforce and interpret the Charter. If the Charter Board is unable to appeal a reversal, its authority as guardian of the Charter is compromised.

We agree with the Charter Board that its functions are different from those of a zoning board, *i.e.*, the tribunal held to have lacked standing in *Lansdowne*. The Charter was adopted pursuant to the Home Rule Law, 53 Pa. C.S. §2941. A home rule charter has the force and status of an enactment of the legislature. *In re Addison*, 122 A.2d 272 (Pa. 1956). Where an agency has been given "certain functions, duties and responsibilities" it is deemed to have been "conferred" an interest, absent statutory language to the contrary. *Pennsylvania Game Commission v. Department of Environmental Resources*, 555 A.2d 812, 815 (Pa. 1989). Through direct democracy, the citizens of the City enacted the Charter Board's enabling legislation, *i.e.*, Amendment I of the Charter. The Charter confers upon the Charter Board the power and duty to enforce and interpret the Charter, adopt necessary rules and regulations, and conduct investigations. The Charter does not limit the Charter Board's interest to that of adjudicating disputes. Thus, the Charter Board has a direct and substantial interest in this appeal.[6]

---

[6] In his brief to this Court, Mayor Spencer argues that the Charter Board is without authority to hear any cases and, thus, lacked jurisdiction to adjudicate this case. The Mayor admits that he did not raise this issue to the trial court, but argues it is not waived because it involves subject matter jurisdiction.

The Charter Board counters that Amendment I, Section 2(b) of the Charter gives it jurisdiction to

> hear and decide all cases alleging violations of the Charter or Administrative Code, except that its jurisdiction shall not extend to any case arising under the Ethics Code or the Personnel Code. Insofar as permitted by state law the Board shall issue binding opinions, impose penalties and administrative fines, refer cases for prosecution, and conduct investigations on its own initiative and on referral or complaint. City Council shall appropriate sufficient funds to enable the Board to

**(Footnote continued on the next page . . .)**

In his second standing argument, Mayor Spencer cites our Supreme Court's seminal decision in *Lyness v. State Board of Medicine*, 605 A.2d 1204 (Pa. 1992), which held that the right to a fair and impartial tribunal prohibits the commingling of prosecutorial and adjudicatory functions. Mayor Spencer argues that the appeal to this Court is being prosecuted by the Charter Board's solicitor, who advised the Charter Board in the instant adjudication. The solicitor appeared at the evidentiary hearing, giving advice to the Charter Board outside the presence of counsel for both parties. Mayor Spencer contends that the Charter Board's appeal violates *Lyness* because it impermissibly commingles adjudicatory and prosecutorial functions of the Charter Board.

In *Lyness*, the agency in question was a professional licensing board whose members determined there was sufficient evidence to initiate a disciplinary

---

**(continued . . .)**

> perform the duties assigned to it, including expenses for independent counsel and other necessary staff.

CHARTER, AMENDMENT I, §2(B); R.R. 61a-62a. Accordingly, the Charter Board argues that it has authority to hear this case and if the Mayor wanted to challenge this authority he needed to raise that issue before the trial court. We agree.

A home rule charter has the force and status of an enactment of the legislature. *In re Addison*, 122 A.2d 272 (Pa. 1956). As such, it is presumed constitutional and the burden of proving otherwise rests on the party alleging unconstitutionality. *Cali v. City of Philadelphia*, 177 A.2d 824 (Pa. 1962). Constitutional challenges do not need to be raised at the administrative agency level, as agencies do not decide constitutional questions. *See* 2 Pa. C.S. §753. However, constitutional challenges must be made to the first court to hear the appeal. *Lehman v. Pennsylvania State Police*, 839 A.2d 265, 276 (Pa. 2003).

Although Mayor Spencer attempts to categorize this issue as one of subject matter jurisdiction in order to avoid waiver, it is really a challenge to the constitutionality of the Charter provision giving the Board the authority to decide, *inter alia,* the complaint against Mayor Spencer. The Mayor needed to challenge the constitutionality of the Charter before the trial court. Because he failed to do so, it is waived. *Newcomer v. Civil Service Commission of Fairchance Borough*, 515 A.2d 108, 110 (Pa. Cmwlth. 1986) (constitutional challenge not raised before the trial court is waived on appeal to this Court).

8

action against a physician and, then, later adjudicated the merits of the action brought against the physician. The *Lyness* court was concerned with the licensee's right to a fair and impartial tribunal, and its focus was on the hearing before the administrative agency. Here, Mayor Spencer does not claim that the Charter Board's prosecutorial and adjudicatory functions were not properly separated during the investigation and hearing phase of the proceeding. *Lyness* is inapposite.

Accordingly, we deny Mayor Spencer's motion to quash appeal.

## Charter Board Appeal

The Charter Board's first issue on appeal is whether the trial court applied the correct standard of review. The Charter Board contends that the trial court incorrectly applied the "capricious disregard" standard because that standard should only be used in rare cases where a fact finder actually ignores evidence. The Charter Board contends that it did not ignore the Geffken Declaration; it considered and rejected this evidence as not credible. The Charter Board contends that its credibility determination is entitled to deference.

Mayor Spencer counters that the Charter Board capriciously disregarded the Geffken Declaration by dismissing it as incredible without explanation. Mayor Spencer argues that deference to a fact finder's credibility determination is appropriate only where the fact finder has observed the demeanor of the witness, which did not occur with respect to the Geffken Declaration. Mayor Spencer argues, alternatively, that the Charter Board considered only the parties' stipulation and not the Geffken Declaration itself.

9

It is axiomatic that findings of fact in a local agency's adjudication must be supported by substantial evidence. 2 Pa. C.S. §754(b).[7] Substantial evidence is evidence that a reasonable mind might accept as sufficient to support a conclusion. *SSEN, Inc. v. Borough Council of Borough of Eddystone*, 810 A.2d 200, 207 (Pa. Cmwlth. 2002). An appellate court may not reweigh the evidence or make credibility determinations. *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeals Board (Marlowe)*, 812 A.2d 478, 487-88 (Pa. 2002). However, an appellate court may "overturn a credibility determination if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational."[8] *Agostino v. Township of Collier*, 968 A.2d 258, 263-64 (Pa. Cmwlth. 2009). A fact finder capriciously disregards evidence "when there is a willful and deliberate disregard of competent

---

[7] Section 754(b) of the Local Agency Law states:

> (b) Complete record.--In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. §706 (relating to disposition of appeals).

2 Pa. C.S. §754(b).

[8] In addition, where the fact finder has not observed the witness testify and cannot assess witness demeanor, a mere conclusion on credibility is inadequate; the fact finder must explain the reasoning for the determination. *See Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1053 (Pa. 2003) (workers' compensation judge must articulate an "objective basis for the credibility determination" of an expert who testifies by deposition in order to permit effective appellate review).

10

testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Id.* at 264 (quoting *Arena v. Packaging Systems Corporation*, 507 A.2d 18, 20 (Pa. 1986)).

In the present case, the trial court did not err in applying the capricious disregard standard. *Leon E. Wintermyer*, 812 A.2d at 487 (holding that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court"). Mayor Spencer correctly points out that the Charter Board provided no explanation for its rejection of the Geffken Declaration, which was highly relevant and competent evidence because Geffken was the person who directly hired the Employees. Indeed, the Geffken Declaration is the *only* evidence of when and how the hirings occurred. Therein, Geffken states that he was solely responsible for the decision to hire the Employees and that the offers were made and accepted prior to Mayor Spencer taking office. Consequently, it is impossible to make a factual finding on the hiring of Employees without considering the Geffken Declaration.[9]

In its second issue, the Charter Board argues that the trial court erred in finding that the Board's decision was not supported by substantial evidence. Specifically, the Charter Board contends that Geffken was Mayor Spencer's "agent and subordinate." Charter Board Brief at 59. It contends that Mayor Spencer

---

[9] We disagree with Mayor Spencer's argument that the Charter Board considered only the stipulation regarding Geffken's proposed testimony and not the Geffken Declaration itself. Although the Charter Board did state in its order that it found the stipulation not credible, when read in context the Board was referring to the substance of Geffken's proffered "testimony," as summarized in his declaration. Thus, the Charter Board did consider the Geffken Declaration; however, as discussed above, the Board capriciously disregarded the Geffken Declaration in reaching its decision.

11

directed Geffken to hire the Employees, in violation of the Charter and Administrative Code. Relatedly, the Charter Board contends that a local agency is not required to accept stipulated facts which conflict with other facts in the record, and it may reach alternate conclusions from the evidence presented. The Charter Board contends that it did so in this case by reaching a different conclusion than that advocated by Mayor Spencer regarding the chain of events that led to the hiring of the Employees.

We agree with the trial court that the Charter Board's finding that Mayor Spencer hired the Employees was not supported by substantial evidence. While the Charter Board is not required to accept uncontradicted evidence as conclusive, it must cite some affirmative evidence to support an alternative conclusion. *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984) ("When the testimony of a witness is not believed, the trier of fact may simply disregard it. Normally the discredited testimony is not considered a sufficient basis for drawing a contrary conclusion."); *see also California Shoppers, Inc. v. Royal Globe Insurance Co.*, 221 Cal. Rptr. 171, 196 (Cal. Ct. App. 1985) ("If a witness testifies, for instance, that *it was not raining* at the time of the collision, and if the jury disbelieves that testimony, such disbelief does not provide evidence that it *was raining* at the time of the collision."). The Charter Board does not point to any evidence supporting its conclusion that it was Mayor Spencer who hired the Employees, only that the Mayor wanted the Employees hired and met with Geffken to discuss hiring the Employees. The only evidence in the record about how and when the hirings came about was the Geffken Declaration, which, as discussed above, the Charter Board capriciously disregarded. In sum, the

12

Charter Board's finding of fact that Mayor Spencer hired the Employees was not supported by substantial evidence.

Further, a fact finder, including an administrative agency such as the Charter Board, is required to accept stipulated facts as binding if the stipulation is clear and unambiguous on its face. *Professional Insurance Agents Association of Pennsylvania, Maryland and Delaware, Inc. v. Koken*, 777 A.2d 1179, 1186-87 (Pa. Cmwlth. 2001); *Klinger v. Workmen's Compensation Appeal Board*, 413 A.2d 432 (Pa. Cmwlth. 1980). In the present case, the parties stipulated that Geffken, if called to testify at the hearing, would testify in a manner consistent with his declaration. While the Charter Board was required to accept this stipulation as binding, the Board was not required to accept the *content* of the Geffken Declaration as binding because assessing the credibility of even uncontradicted evidence is the sole province of the fact finder. However, as discussed above, the Board capriciously disregarded the Geffken Declaration by not explaining its credibility determination.

The Charter Board's final argument is that the trial court improperly reweighed the evidence. Specifically, the Charter Board argues that the trial court improperly credited the Geffken Declaration after the Board found it was not credible. The Charter Board argues that it explained its rationale for rejecting the Geffken Declaration as not credible; therefore, that determination was supported by substantial evidence. The Charter Board asserts that the trial court overstepped its authority by reweighing the evidence and making credibility determinations.

We agree with Mayor Spencer that the trial court did not substitute its own judgment for that of the Charter Board. Rather, the trial court reviewed and summarized the evidence. In doing so, the trial court observed that the Geffken

13

Declaration was the only evidence of when the Employees were hired. The trial court made no findings regarding the accuracy of the content of the Geffken Declaration, only that it was relevant and competent evidence that the Charter Board capriciously disregarded. As explained above in the discussion of the Charter Board's first issue, the trial court committed no error in so holding.

## Conclusion

For all of the foregoing reasons, the Mayor's motion to quash is denied and the order of the trial court is affirmed.[10]

_____
MARY HANNAH LEAVITT, Judge

Judge Leadbetter did not participate in the decision in this case.

---

[10] Mayor Spencer also raises several alternative arguments to justify the trial court's holding, including whether the Charter Board violated the Mayor's due process rights or committed an error of law. Because the trial court properly found that the Charter Board's decision was not supported by substantial evidence and the Board capriciously disregarded evidence, we do not address these alternative arguments.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Honorable Vaughn D. Spencer,   :
Mayor of the City of Reading         :
                                    :
          v.               :   1377 C.D. 2013
                                      :
City of Reading Charter Board,     :
               Appellant    :

# O R D E R

AND NOW, this 8th day of August, 2014, the motion to Quash of the Honorable Vaughn D. Spencer, Mayor of the City of Reading, is DENIED and the order of the Berks County Court of Common Pleas, dated July 16, 2013, is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, Judge