DISSENTING OPINION BY
Judge SIMPSON.
What happens when a provision of a municipality’s home rule charter is inconsistent with a state statute of general application? The Majority holds that the home rule charter provision can prevail if it is more specific than the provision of the state statute. I respectfully disagree.

Í.

Here, according to the Majority, the inconsistency involves whether police officers of the City of Pittsburgh (City) may bargain a requirement of residency 'in the City. On the one hand, Section 1 of the Policemen and Firemen Collective Bargaining Act (Act 111)[1] guarantees “[p]o-lieemen ... the right to bargain collectively with their public employers concerning the terms and conditions of their employment— ” It is beyond question'that-Act 111 is a state statute of general application. Section 9 of Act 111-, 43 P.S. § 217.9. Our Supreme Court has held that under Act 111 residency is a bargainable condition of employment. Twp. of Moon v. Police Officers of Twp. of Moon, 508 Pa. 495, 498 A.2d 1305 (1985).
On the other hand, during a contract impasse and ensuing arbitration between the City and its police union, Fraternal Order of Police, Fort Pitt Lodge No. l(FOP), Pittsburgh City Council ordered a referendum. Pursuant to the referendum the voters amended the City’s Home Rule Charter to require that all City employees, including police officers, maintain, a domicile in the City. In effect, the new Home Rule Charter , provision withdraws from the City the authority to bargain with its employees about residency. In such a circumstance,. an arbitrator under Act 111 cannot award police officers relief from the residency requirement, because the City could not agree to the .relief voluntarily.
In sum, the inconsistency'in this case, as framed' by the Majority, is between the Act 111 guarantee for police officers to bargain with the City about residency, and the new provision of the City’s Home Rule Charter which precludes the City from bargaining about residency.
2.
This inconsistency should be easy to resolve. This is because the Home Rule Charter and Optional Plans Law (Home Rule Charter Law)[2] limits home rule authority, like that., exercised here. Specifically, Section 2962(c)(2) provides that a municipality shall not “[ejxercise powers contrary to, or in limitation or enlargement of, powers granted .by statutes .which are applicable in every part of this Commonwealth.” 53 ’ Pa.C.S. § 2962(c)(2). Further, .Section 2962(e) of' .the." Home Rule Charter Law, -53 Pa.C.S. § 2962(e), provides, with-emphasis added:
*1292 (e) statutes of general application.—
Statutes that are uniform and applicable in every part of this Commonwealth shall remain in effect' and shall not 'be changed or modified by this subpart. Statutes shall supersede any municipal ordinance or' résolution ón the same subject.
Given these express limitations in the Home Rule Charter Law, it seems obvious that in the event of a conflict between a statute of general application, .such as Act 111, and a home rule charter provision, the state statute prevails. In this context, the Act 111 guarantee of police officers’ ability to bargain over residency prevails over the Home Rule Charter requirement of residency.
Indeed, this Court has already’ made that ruling. In City of Wilkes-Barre v. City of Wilkes-Barre Police Benevolent Ass’n, 814 A.2d 285, 290 (Pa.Cmwlth.2002), we held that under Act 111 residency is a condition of employment and not a managerial prerogative. We also held that the General Assembly intended Act 111 to apply despite the existence of a home rule charter. Id. at 290. Neither the home rule charter, nor an enactment of a home rule municipality may contain provisions contrary to or in limitation or enlargement of powers established by Act 111. Id. Act 111 provides police officers employed by a political subdivision the power to bargain with their public employers concerning the terms and conditions of their employment. Id. When Act 111 applies, neither a home rule charter nor an enactment by a home rule municipality may change the ability to bargain about residency. Id. The failure to include a residency requirement in an arbitration award, contrary to a provision in a home rule charter, did not force the city to perform an illegal act. Id.
Thus, under the express terms of the Home Rule Charter Law, and under a prior holding of this Court, the Act 111 guarantee of police officers’ rights to bargain about residency prevails over an inconsistent home rule charter provision.
Further, I would reach the same result even without this Court’s prior holding in City of Wilkes-Barre. Usually, when there is a conflict between a state statute and a municipal enactment, we apply principles of preemption to resolve the controversy. Based on the express limitations placed on home rule municipalities by the Home Rule Charter Law, as discussed above, and applying the principle of express preemption, I conclude that "the General Assembly intended state statutes of general application to supersede inconsistent home rule municipality enactments. Unfortunately, the Majority does not consider principles of preemption.
3.
How does the Majority deal with these clear statements of law? The Majority determines that “a home rule charter has the force an,d effect of a state statute,” and an inconsistency between state statutes should be resplved by resort to rules of statutory construction. Maj. Op., at 1290-91 (emphasis added).[3] The Majority cites Spencer v. City of Reading Charter Board, 97 A.3d 834 (Pa.Cmwlth.2014) for this remarkable proposition. Maj. Op., at 1288-89. However, the Majority errs in several ways.
First.and foremost, Spencer does not support the Majority’s claim. What the Court in Spencer actually said was that “[a] home rule charter has the force and status of an enactment of the legislature.” 97 A.3d at 840.’ ' Significantly, the word *1293 “state” does not appear in the quote; rather, it was added by the Majority. What the Court was trying to convey in Spencer was that a home rule charter provision has the force and effect of an enactment of the municipality’s legislative body, not that a home rule charter provision is the equivalent of a state statute.
Moreover, Spencer dealt with standing of a board created by the municipality’s home rule charter to challenge a trial court’s decision. Spencer did not deal with a conflict between a state statute and a home rule charter provision. Further, the Spencer Court did not proclaim that state statutes of general application stand on equal footing with home rule charter provisions, nor did the Spencer Court resort to statutory construction to resolve inconsistencies, The Spencer Court could not do so in light of the express limitations placed on home rule municipalities by the Home Rule Charter Law, discussed above.
Second, even if we were to treat a state statute and a home rule charter provision as on equal footing, the Majority ignores the analytical process our Supreme Court uses to determine which entity the “legislature” intended to have preeminent powers over a given area of regulation. This process was originally set forth in Department of General Services v. Ogontz Area Neighbors Ass’n, 505 Pa. 614, 483 A.2d 448 (1984), and the process was recently applied again by the Court in Southeastern Pennsylvania Transportation Authority v. City of Philadelphia, 627 Pa. 470, 101 A.3d 79 (2014). “The first step requires the reviewing court to determine, through the examination of the statutes, which governmental entity, if any, the General Assembly expressly intended to be preeminent.” Southeastern Pennsylvania Transportation Authority, 101 A.3d at 87. Based on the express limitations placed on home rule municipalities by the Home Rule Charter Law, discussed above, I conclude the General Assembly intended that its enactments of state-wide application should be preeminent over inconsistent enactments of a home rule municipality.
4.
Finally, from a policy perspective, the prospect of a home rule municipality using an amendment of the home rule charter to gain an advantage in ongoing collective bargaining is troublesome. The Majority utterly fails to address this concern.
5.
For all these reasons, I would hold that City police officers have the right under Act 111 to bargain for the terms of their employment, including residency, despite any contrary provision in the City’s Home Rule Charter. I would also hold that the arbitrators had the authority to enter an award regarding residency. Accordingly, I would affirm the respected trial court, which declined the City’s invitation to vacate the arbitration award.
Judges BROBSON and COVEY join in this dissent.

. Act of June 24, 1968, P.L. § 217.1. CO to OJ

. 53Pa.C.S. §§ 2901-3171.

. It is noteworthy - that the parties do not make this argument. Instead, the Majority raises this legal theory on its own, and we lack the parties' analysis of this theory: